[Nos. B015384, B018241. Second Dist., Div. Three. May 7, 1987.]

MICHAEL H., Plaintiff, Cross-defendant and Appellant, v.
GERALD D., Defendant, Cross-defendant and Respondent;
VICTORIA D., a Minor, etc., Defendant, Cross-complainant and
Appellant.

**COUNSEL**

Newman, Aaronson, Krekorian, Vanaman and Joel Aaronson for Plaintiff, Cross-defendant and Appellant.

Paul Hoffman, Gary Williams and Patricia Erickson as Amici Curiae on behalf of Plaintiff, Cross-defendant and Appellant.

Shear & Kushner, Bledstein, Lauber & Wire, Leslie Ellen Shear and Elliot Kushner for Defendant, Cross-complainant and Appellant.

Michael Louis Oddenino as Amicus Curiae on behalf of Defendant, Cross-complainant and Appellant.

Larry Hoffman and Glen H. Schwartz for Defendant, Cross-defendant and Respondent.

## Opinion

ARABIAN, J.—

### Introduction

Plaintiff, cross-defendant and appellant Michael H. brought this reverse paternity action against defendant, cross-defendant and respondent, Gerald D.; his wife, defendant and cross-defendant, Carole D.; and defendant, cross-complainant and appellant Victoria D.; to establish that he is Victoria D.'s biological father and to establish a father/child relationship with her. The trial court appointed a guardian ad litem/attorney to represent Victoria D.'s interests in the action and she filed a cross-complaint to establish a legal or de facto/psychological parent-child relationship with Gerald D. and/or Michael H. Gerald D. moved for summary judgment on the first amended complaint and the cross-complaint on the ground that there were no triable issues of fact regarding application of the conclusive presumption of Evidence Code section 621, subdivision (a), that the issue of a married woman cohabiting with her husband, who is not impotent or sterile, is a child of that marriage. The trial court granted the motion and Michael H. and Victoria D. separately appealed.[1]

### Facts

Carole D. and Gerald D. were married and commenced living together as husband and wife on May 9, 1976. While still married and living together as husband and wife, Carole conceived and, on May 11, 1981, gave birth to Victoria D. Carole D. had an extra-marital affair with Michael H. during the period the parties agree Carole D. conceived Victoria D.

After Victoria D. was born, Carole D. told Michael H. she believed the child could be his. On October 29, 1981, Carole D., Michael H. and Victoria D. had blood tests performed at the University of California at Los Angeles. Those tests show that there is a 98.07 percent probability that Michael H. is Victoria D.'s biological father. Carole D. separated from Gerald D. in October of 1981, and Gerald D. left Los Angeles for New York City where he had obtained employment. Thereafter, Carole D. and Victoria D. went

---

[1]The judgment in this case was filed on October 22, 1985. The notices of appeal of Michael H. and Victoria D. were prematurely filed following the trial court's order granting the summary judgment. Rule 2(c), of the California Rules of Court, provides in pertinent part: "A notice of appeal filed prior to entry of the judgment, but after its rendition, shall be valid and shall be deemed to have been filed immediately after entry." Therefore, we have determined the premature notices of appeal are valid. (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 412, pp. 410-411.)

to live with Michael H. in St. Thomas. They lived with him for three months, from January of 1982 to March of 1982.

Carole D. and Victoria D. returned to Los Angeles after leaving Michael H. They visited Gerald D. in New York one month in the spring of 1982, one month in the summer of 1982, and then went with him to Europe for three weeks in the fall of 1982. Thereafter, Carole D. and Gerald D. decided to reconcile.

On November 18, 1982, Michael H. brought the instant action.

In March of 1983 through July of 1983, Carole D. and Victoria D. lived with Gerald D. in New York. Carole D. and Victoria D. returned to Los Angeles in July, and in August of 1983, they again took up residence with Michael H. They lived with Michael H. until April of 1984, and during this time Carole D. acknowledged Michael H. as Victoria D.'s father and Victoria D. called him "daddy."

In March of 1984, shortly before Carole D. left Michael H., she signed a stipulation acknowledging that Michael H. was Victoria D.'s father. However, when she left Michael H., she instructed her attorney not to file the stipulation in court. In June of 1984, Carole D. and Gerald D. again reconciled.

Thereafter, both Michael H. and Victoria D., through her guardian ad litem/attorney, sought visitation rights for Michael H. pendente lite.[2]

To assist the court in making appropriate visitation orders, Dr. Norman Stone was appointed to test and evaluate Michael H., Victoria D., Carole D. and Gerald D. In his evaluation report, Dr. Stone recommended that Michael H.'s interaction with Victoria D. be strictly limited and that he not be assigned major caretaking responsibilities, even to the extent of a " 'standard' " visitation schedule, because of the potential harm to Victoria D. However, Dr. Stone recommended that Michael H. be permitted to remain "a member of her family," because he perceived Michael H. "as the single adult in Victoria's life most committed to caring for her needs on a long-term basis."

Dr. Stone's evaluation of Michael H. indicated that Michael H.'s personality has failed to bring him the close relationships he seeks, leading him to feel victimized, and that those feelings exacerbate his sympathy-eliciting and aggressive pursuit of relationships, establishing a potentially endless cycle.

---

[2]During many of the periods when Michael H. and Carole D. were separated, Michael H. sent Carole D. money to support herself and Victoria D.

While Dr. Stone found no evidence of any inappropriate sexual contact between Michael H. and Victoria D., he observed that Michael H. "exhibits virtually all of the characteristics associated with parents who engage in incestuous-type relationships."

Dr. Stone concluded that Carole D. was child-like and had a limited capacity to be intimate or self-sacrificing to the degree which normally characterizes relationships between parents and children and between spouses. Gerald D. was found to be a kind and intelligent man who has a real attachment to both Carole D. and Victoria D. and who clearly demonstrates the capacity to be a fine parent.

Based on Dr. Stone's report, in October of 1984, the parties stipulated to a visitation schedule. It was filed by order of the court on October 13, 1984. This plan was followed until the court granted Gerald D.'s motion for summary judgment on January 28, 1985, with respect to the first amended complaint and the cross-complaint.

Carole D. and Gerald D. are still married and living with Victoria D. (and their new two-month old baby boy) at this time.

CONTENTIONS

Michael H. contends:

I. "The presumption in Evidence Code section 621 should apply to promote the best interests of the child.

II. "The actions of [Carole D. and Gerald D.] constitute an equitable bar to the application of section 621."

Victoria D. contends:

I. "The trial court erred in dismissing without trial that portion of the Victoria's cross-complaint which sought to preserve the psychological parent and child relationship between Victoria and Michael, and to establish visitation rights under Civil Code section 4601."

II. "Application of Evidence Code section 621 to terminate the relationship between Victoria and Michael deprived Victoria of her rights under the due process and equal protection provisions of the United States and California Constitutions to maintain a relationship with a biological parent with whom she had established a psychological relationship."

III. "The motion for summary judgment was premature, in that discovery was incomplete and had been thwarted by the refusal of Carole and Gerald to answer questions propounded at their depositions."

IV. "Triable issues of fact existed as to the issues of cohabitation, stability, custody/visitation, support, attorneys fees, and the existence of psychological parent-child relationship as well as the facts necessary to determine whether Evidence Code [section] 621 might be constitutionally applied."

V. "Gerald and Carole were estopped from denying that Michael had a legal, biological, and psychological relationship with Victoria."

VI. "Gerald's failure to timely file a separate statement of material facts required defeat of his motion for summary judgment."

DISCUSSION

I. *Standard of Review.*

■ "Inasmuch as this case reaches this court on appeal from a summary judgment in favor of the defendant [and cross-defendant Gerald D.], it is only necessary for us to determine whether there is any *possibility* [Michael H. and Victoria D.] may be able to establish [their] case[s]. (*Tresemer* v. *Barke* (1978) 86 Cal.App.3d 656, 661-662 [150 Cal.Rptr. 384, 12 A.L.R.4th 27]; *Frazier, Dame, Doherty, Parrish and Hanawalt* v. *Boccardo, Blum, Lull, Niland, Teerlink & Bell* (1977) 70 Cal.App.3d 331, 338-339 [138 Cal.Rptr. 670].) ■ Summary judgment is properly granted where the evidence in support of the moving party conclusively negates a necessary element of the plaintiff's case or establishes a complete defense and thus demonstrates that under no hypothesis whatever is there a material factual issue which requires the process of a trial. (*Ibid.*; accord, *Sprecher* v. *Adamson Companies* (1981) 30 Cal.3d 358, 362 [178 Cal.Rptr. 783, 636 P.2d 1121].) . . . 'The purpose of the summary procedure is to penetrate through evasive language and, adept pleadings and ascertain the existence or absence of triable issues.' (*Chern* v. *Bank of America* [1976] 15 Cal.3d [866,] 873 [127 Cal.Rptr. 110, 544 P.2d 1310].)" (*Osmond* v. *EWAP, Inc.* (1984) 153 Cal.App.3d 842, 850 [200 Cal.Rptr. 674].)

II. *The Trial Court Did Not Err in Denying the Request of Victoria D. That the Summary Judgment Motion Be Denied for Procedural Irregularity.*

■ Victoria D. contends that the trial court erred in granting the summary judgment motion because Gerald D. failed to timely file his statement of material facts.

Code of Civil Procedure section 437c, subdivision (b), requires a party moving for summary judgment to include in his papers supporting the motion a statement of the facts he contends are undisputed and provides the failure to comply with said requirement "may in the court's *discretion* constitute a sufficient ground for denial of the motion." (Italics added.) Subdivision (a) of that statute further provides that the moving papers, including the separate statement, be served, if service is by mail, not less than 33 days (28 + 5) before the hearing.

Gerald D. did not file and serve a separate statement when he filed and served his motion for summary judgment on October 9, 1984. The motion, originally set for hearing on November 16, 1984, was continued, first to January 14, 1985, and then to January 28, 1985, when the motion was heard. Gerald D.'s separate statement was served by mail on December 21, 1984. Thus, Gerald D.'s statement was served 38 days before January 28, 1985, when the motion was actually heard. That being so, we cannot say that appellants were prejudiced or that the trial court abused its discretion by refusing to deny the summary judgment motion on the ground the statement was filed late.

III. *The Summary Judgment Was Not Prematurely Granted.*

 Victoria D. contends the trial court erred in reaching the merits of the summary judgment motion, in failing to order a continuance, and in failing to grant her motion to compel discovery, which was heard at the same time as the motion for summary judgment. Victoria D. asserts that discovery was incomplete, having been thwarted by the refusal of Carole D. and Gerald D. to answer questions at their depositions which their attorneys deemed irrelevant to these proceedings.

Victoria D. cites to former Code of Civil Procedure section 437c, subdivision (h), which, when the summary judgment was granted, provided: "If it appears from the affidavits submitted in opposition to the motion that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented, the court shall deny the motion, or order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as may be just."[3]

Victoria D. argues that under *Michelle W.* v. *Ronald* W. (1985) 39 Cal.3d 354 [216 Cal.Rptr. 748, 703 P.2d 88], app. dism. (1986) 474 U.S. 1043 [88 L.Ed.2d 754, 106 S.Ct. 774], the section 621 presumption is rebuttable and that she was entitled, before the summary judgment was granted, to discover facts which transcended the preliminary facts of marriage, cohabitation and

---

[3]The present version of the statute was effective January 1, 1987 (Stats. 1986, ch. 540, § 3).

sterility/nonsterility. She argues also that she should have been allowed to discover facts behind the bare assertions of Gerald D. and Carole D. that he is not sterile nor impotent and that they cohabited during the relevant period. For example, Victoria D. believes she should have been able to inquire into what Carole D. and Gerald D. meant when they said they enjoyed "regular" sexual relations, since they did not specify the frequency. Victoria D. would also like to discover their business and medical records to ascertain exactly when they were together and the exact date of conception. Victoria D. asserts further that triable issues remain regarding the existence of a de facto parent-child relationship with Michael H., since she sought care, supervision and rights of inheritance from both Michael H. and Gerald D.

In granting the motion for summary judgment, the court necessarily found that Carole D. and Gerald D. were married and cohabitating and that Gerald D. was neither impotent nor sterile when Victoria D. was conceived and born. Thus, it denied as irrelevant after summary judgment Victoria D.'s concurrent motion to compel answers to questions propounded at the deposition of Carole D. and Gerald D. (Code Civ. Proc., § 2034, subd. (a)), to compel Carole D.'s further deposition in Los Angeles (Code Civ. Proc., § 2019, subd. (b)(2)) and for an award of her attorneys' fees and costs incurred in taking the original depositions of Carole D. and Gerald D.

We find that there were no triable issues that pertained to the preliminary facts which must be established to invoke the conclusive presumption of section 621.

■ "The conclusive presumption is actually a substantive rule of law based upon a determination by the Legislature as a matter of overriding social policy, that given a certain relationship between the husband and wife, the husband is to be held responsible for the child, and that the integrity of the family unit should not be impugned. (*Kusior* v. *Silver* (1960) 54 Cal.2d 603, 619 [7 Cal.Rptr. 129, 354 P.2d 657].) In addition, the rule protects the innocent child from the social stigma of illegitimacy. (*In re Marriage of B.* (1981) 124 Cal.App.3d 524, 529-530 [174 Cal.Rptr. 429].) Although the Uniform Parentage Act, adopted in California in 1975 (Civ. Code, § 7000 et seq.), attempts to remove the legal effect of illegitimacy, the Legislature nevertheless retained the conclusive presumption of Evidence Code section 621, in contrast to the other presumptions under the act, which are rebuttable. (Civ. Code, § 7004, subds. (a), (b); 7 Pacific L.J. (1976) 411, 412; Note (1976) 28 Hastings L.J. 191, 207.)" (*Vincent B.* v. *Joan R.* (1981) 126 Cal.App.3d 619, 623 [179 Cal.Rptr. 9], app. dism. (1982) 459 U.S. 807 [74 L.Ed.2d 45, 103 S.Ct. 31].)

■ The parties do not dispute the fact that Carole D. and Gerald D. were married during the relevant time periods and the affidavits of Carole

D. and Gerald D. establish that fact. Further, the statements of Carole D. and Gerald D. in their respective affidavits are sufficient to establish that they cohabited during the relevant time period and that Gerald D. was not sterile nor impotent.

Specifically, in her affidavit, Carole D. states that she and Gerald D. resided together continuously, from the date of their marriage, May 9, 1976, until October of 1981, except for intermittent periods when they were apart for reasons pertaining to their respective careers. In his deposition, Gerald D. testified that he lived in Playa del Rey, California, from 1976 until 1981, during which time he maintained no other residence and maintained no telephone other than the one at his Playa del Rey residence and that when Carole D. was out of town for work assignments, he traveled to visit her at the place where she was working. These facts are not contradicted.

The affidavits of Carole D. and Gerald D. establish, and no one disputes that, Victoria D. was conceived in September of 1980. Even the affidavit of Michael H. in opposition to the summary judgment motion establishes that Carole D. and Gerald D. were cohabitating at that time. Michael H. relates that he came to Los Angeles in June of 1980 when Gerald D. was leaving the city and that he saw Carole D. on a regular basis during July, August, and September of that year "[e]ven when Gerald, Carole's husband, *was in Los Angeles . . . .*" (Italics added.)

Both Carole D. and Gerald D. stated in their affidavits that they engaged in sexual intercourse regularly throughout their marriage. These facts are sufficient to establish cohabitation. (See *Vincent B.* v. *Joan R., supra,* 126 Cal.App.3d at p. 623.) The statements of Michael H. in his affidavit, that Carole D. told him that she and Gerald D. were using separate bedrooms and that they were no longer having sexual intercourse, does not create a triable issue of fact. "Cohabitation means simply to live or dwell together in the same habitation; evidence of lack of sexual relations is irrelevant." (*Ibid.*)

Gerald D. declared in his affidavit: "I am not now, nor have I ever been, impotent or sterile. In addition to the pregnancy which gave birth to Victoria, on two previous occasions I impregnated Carole: The first pregnancy terminated by miscarriage and the second by therapeutic abortion." In the affidavit of Carole D., she stated that she has never known Gerald D. to be impotent and had no knowledge that he is sterile. She also confirmed that she has twice before conceived a child as a result of intercourse with Gerald D. Those statements by Gerald D. and Carole D. are sufficient to establish that Gerald D. is not impotent nor sterile. (See *Vincent B.* v. *Joan R., supra,* 126 Cal.App.3d at pp. 623-624.) The statement of Michael H. in his affidavit, that Carole D. told him that she had never been pregnant as a result

of sexual intercourse with Gerald D., does not change that result. Even assuming Carole D. made such a statement, nothing in the statement suggests that sterility is the reason she was never impregnated by Gerald D. (*Id.,* at p. 624.) Michael H. has the burden in these circumstances to prove that Gerald D. is sterile or impotent. (*Ibid.*) He has failed to meet that burden.

Thus, there are no triable issues of fact as to the usual preliminary facts required for application of the conclusive presumption of section 621.

There is also no merit to Victoria D.'s assertion that the court should have deferred ruling on the summary judgment until blood tests could be taken of Carole D., Gerald D., and Victoria D. Blood tests are only admissible to contradict the conclusive presumption under circumstances not here relevant. (See Evid. Code, § 621, subds. (b), (c), (d).)

Further, as we discuss under parts IV, V, and VI of this opinion, *infra,* there were no relevant triable issues of fact on which the court required further evidence to determine (1) whether, under the circumstances of this particular case, the conclusive presumption of section 621 is limited and (2) whether Michael H. is entitled to a de facto/psychological parent-child relationship with Victoria D.[4]

Thus, it follows that the trial court did not act prematurely in reaching the merits of the summary judgment motion, as Victoria D. contends. However, the court did err in prematurely concluding the proceedings without allowing Victoria D. to establish her claim for attorneys' fees and costs set forth in her concurrent motion which was denied as being irrelevant after the summary judgment. Upon remand, the court may issue a separate order in this regard.

IV. *Neither Michael H. Nor Victoria D. Were Deprived of Their Constitutional Rights by the Application of Section 621 Under the Circumstances of This Particular Case.*

Victoria D. and Michael H. separately contend that application of section 621 to terminate their relationship deprived them of rights under the United States and California Constitutions. They correctly assert that in *Michelle W. v. Ronald W., supra,* 39 Cal.3d 354, the California Supreme Court left open the validity of section 621 as applied to a situation where the state is preventing the establishment of a relationship between a putative father and child. (*Id.,* at p. 362, fn. 4.)

---

[4]The parties agreed at oral argument that no evidence other than that which appears in this record on appeal is necessary to make these determinations.

As did the putative father and daughter in *Michelle W.,* Michael H. and Victoria D. assert alternative grounds for holding section 621 unconstitutional. First, they assert that section 621 prevents them from establishing the biological parent-child relationship in a court of law, thus depriving them of a liberty interest protected by the due process clause. Second, amicus curiae for Victoria D., National Council for Children's Rights, Inc., also makes the equal protection argument that the statute allows mothers and presumed fathers to rebut the presumption of legitimacy (Evid. Code, § 621, subds. (b), (c), (d)), but denies Victoria D. the same opportunity.

A. *Due Process Claims.*

■ The issue whether section 621 adequately protects a putative father's interests " 'must be resolved by weighing the competing private and state interests.' " (*Michelle W. v. Ronald W., supra,* 39 Cal.3d at p. 360; *In re Lisa R.* (1975) 13 Cal.3d 636, 648 [119 Cal.Rptr. 475, 532 P.2d 123, 90 A.L.R.3d 1017], cert. den. (1975) 421 U.S. 1014 [44 L.Ed.2d 682, 95 S.Ct. 2421], rehg. den. (1975) 423 U.S. 885 [46 L.Ed.2d 116, 96 S.Ct. 159].)

Likewise, we must apply a balancing test to determine whether the child is denied due process by operation of section 621. (*Michelle W. v. Ronald W., supra,* 39 Cal.3d at p. 363; see *Estate of Cornelious* (1984) 35 Cal.3d 461, 467 [198 Cal.Rptr. 543, 674 P.2d 245], app. dism. (1984) 466 U.S. 967 [80 L.Ed.2d 812, 104 S.Ct. 2337].)

*Michael H.*

■ While the interest of Michael H. in establishing that he is the biological parent of Victoria D. may be substantial, the interest of Michael H. is outweighed by the state's interest in upholding the integrity of the family (*Michelle W. v. Ronald W., supra,* 39 Cal.3d at p. 362; *Kusior v. Silver* (1960) 54 Cal.2d 603, 619 [7 Cal.Rptr. 129, 354 P.2d 657]), and in protecting the child's welfare (*Michelle W. v. Ronald W., supra,* 39 Cal.3d at p. 362; compare *In re Lisa R., supra,* 13 Cal.3d at pp. 649-650).

We appreciate that Michael H. has shown an interest in Victoria D. almost since her birth, has established an affectionate relationship with her and has at times even contributed to her support. However, the state's interest in preserving the integrity of the matrimonial family is so significant that it outweighs most other interests. (*Kusior v. Silver, supra,* 54 Cal.2d at p. 619 ["there are significant reasons why the integrity of the family when husband and wife are living together as such should not be impugned"].)

In *Stanley v. Illinois* (1971) 405 U.S. 645 [31 L.Ed. 2d 551, 92 S.Ct. 1208], and *In re Lisa R., supra,* 13 Cal.3d 636, there was also a state-threatened

termination of a developed parent-child relationship. The difference between those cases and this case, however, is clear. "In both *Stanley* and *Lisa R.*, the putative fathers were seeking to establish their legal relationship with children who otherwise had no parents and were wards of the state." (*Estate of Cornelious, supra,* 35 Cal.3d at p. 466; see *Michelle W.* v. *Ronald W., supra,* 39 Cal.3d at p. 362; *Vincent B.* v. *Joan R., supra,* 126 Cal.App.3d at pp. 624-626.) Here, Gerald D. and Carole D. are now living together with Victoria D. and their new baby boy as a family unit. The state's interest in maintaining that family is considerable.

Moreover, there are competing private interests in this case which were not present in *Stanley* and *Lisa R.* Carole D. and Gerald D., who have custody of Victoria D., oppose this action and do not desire that Victoria D. have contact with Michael H.

On this record, the significant interest of the state in protecting the welfare of Victoria D. is best served by upholding the conclusive presumption that Gerald D. is her legal father. (See *Michelle W.* v. *Ronald W., supra,* 39 Cal.3d at p. 362; cf. *In re Lisa R., supra,* 13 Cal.3d at pp. 649-650.)

We hold Michael H.'s "private interest in establishing a biological relationship in a court of law is overridden by the substantial state interests in familial stability and the welfare of the child." (*Michelle W.* v. *Ronald W., supra,* 39 Cal.3d at p. 363.) Thus, with respect to Michael H., the application of section 621 to this case comports with the requirement of due process of law.

### *Victoria D.*

The interest of Victoria D. in a legal determination of who her biological father is, under the particular circumstances of this case, is also outweighed by the state's interests, described, *supra.* (See *Estate of Cornelious, supra,* 35 Cal.3d 461.)

Section 621 does not purport to factually determine the biological paternity of a child (*Kusior* v. *Silver, supra,* 54 Cal.2d at p. 619) nor do the actions of judges create or sever genetic bonds (*Lehr* v. *Robertson* (1983) 463 U.S. 248 [77 L.Ed.2d 614, 103 S.Ct. 2985]). (See *Michelle W.* v. *Ronald W., supra,* 39 Cal.3d at pp. 362-363.)

The state has an "interest in preserving and protecting the developed parent-child and sibling relationships which give young children social and emotional strength and stability." (*Michelle W.* v. *Ronald W., supra,* 39 Cal.3d at p. 363.)

Given the fact that Victoria D. has a legal father and that he and Carole D., Victoria D.'s mother, oppose the attempt of Michael H. to have himself declared her biological father, the welfare of Victoria D. would be harmed, not protected if she were permitted to rebut the conclusive presumption of legitimacy.

Moreover, notwithstanding this state's adoption of the Uniform Parentage Act, which rendered illegitimacy to be without any legal effect (*Michelle W. v. Ronald W., supra,* 39 Cal.3d at p. 362, fn. 5), this resolution protects Victoria D. "against the social stigma of being branded a child of an adulterous relationship" (*Vincent B. v. Joan R., supra,* 126 Cal.App.3d at p. 626).

Therefore, Victoria D. was not denied due process by the application of section 621 in this particular case.

B. *Equal Protection Claim.*

█ The argument of amicus curiae for Victoria D., that section 621 allows mothers and presumed fathers to rebut the presumption of legitimacy, but denies the presumed legitimate child the same opportunity, must also fail. In *Michelle W.,* the California Supreme Court's most recent decision in this area, it declared: "[W]e have declined to interpret section 621 as an absolute bar to all suits to establish paternity by either the putative father or the presumed legitimate *child.* Rather, we have applied the balancing test analysis of *Lisa R.* and *Estate of Cornelious.*" (*Michelle W. v. Ronald W., supra,* 39 Cal.3d at p. 365, italics added.)

V. *Gerald D. Is Not Estopped From Asserting the Conclusive Presumption of Section 621.*

██ Michael H. and Victoria D. assert that Carole D., and thereby Gerald D., should be estopped from barring Michael H.'s claim of paternity with section 621. We disagree.

That statutory scheme allows the use of blood test evidence to rebut the conclusive presumption of Evidence Code section 621 (subd. (b)), but only within two years from the child's date of birth (subds. (c), (d)) and only by (1) the husband (subd. (c)) *or* (2) by the mother if the child's biological father has filed an affidavit with the court acknowledging paternity of the child (subd. (d)).

Evidence Code section 623 provides: "Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it."

"The essence of an estoppel, if it is applicable at all in these circumstances, is that the party to be estopped has by false language or conduct led another to do that which he would not otherwise have done and as a result thereof that he has suffered injury." (*In re Lisa R., supra,* 13 Cal.3d at p. 645; *El Rio Oils* v. *Pacific Coast Asphalt Co.* (1949) 95 Cal.App.2d 186, 194 [213, P.2d 1] cert. den. (1950) 340 U.S. 850 [95 L.Ed. 623, 71 S.Ct. 77].)

The estoppel claims of Michael H. and Victoria D. are based on the following facts: that their blood tests showing the probable paternity of Michael H. were performed less than six months after the birth of Victoria D.; that Michael H. filed this action acknowledging paternity when Victoria D. was just one and one-half years old; that counsel of Carole D. filed for a summary adjudication in May of 1983, but then took the matter off calendar when Carole D. resumed living with Michael H., holding him out as the father of Victoria D.; that just before the two-year period expired, Carole D. executed a stipulation for judgment declaring Michael H. to be the father of Victoria D., but then instructed her counsel not to file it in court; that Gerald D. acquiesced in the paternity of Michael H. inasmuch as he did not join in the instant action until 1984 although he was earlier served with summons; and that Carole D. participated in the maintenance of a father-daughter relationship between Victoria D. and Michael H.

While these facts may all be true, they do not demonstrate that Carole D. induced Michael H. "to his detriment to act in any manner he would not otherwise have acted in these proceedings." (*In re Lisa R., supra,* 13 Cal.3d at p. 645.)

The fact remains that under the statutory scheme Michael H. could not act *alone* to rebut the conclusive presumption of section 621. That section (subd. (d)) requires the putative father and the mother to act *together* within two years to overcome the presumption. "[T]he plain word of the statute indicates that the rights of the natural married mother and the natural unwed father are conditioned upon each other." (*Michelle W.* v. *Ronald W., supra,* 39 Cal.3d at p. 365.)

Plainly, Carole D. found difficulty in resisting the pressure of Michael H. to assist him in his pursuit of a judicial declaration of his paternity. That she did each time fail to take the final critical step is not evidence that she nor Gerald D. should now be estopped from barring the quest of Michael H. for legal parenthood with the conclusive presumption of section 621.

Simply put, Michael H. could do nothing different in this action without the cooperation of Carole D. no matter how she or Gerald D. behaved and no matter what they said or did. In fact, any delay Michael H. endured in

pressing his claim served to enhance not prejudice his case, since it was based in great part on his assertion that Victoria D. had come to know and love him over the years.

VI. *The Trial Court Did Not Err in Failing to Hold That Michael H. Is the De Facto/ Psychological Parent of Victoria D. or That Michael H. Is Entitled to Visitation Rights.*

 Victoria D. contends the trial court erred in dismissing without trial that portion of the cross-complaint of Victoria D. which sought to preserve the de facto/psychological relationship between Victoria D. and Michael H. and to establish visitation rights pursuant to the second sentence of Civil Code section 4601.[5]

In her cross-complaint, Victoria D. sought a declaration of her rights regarding Michael H. and Gerald D. and claimed she had either a legal or a de facto/psychological relationship with both of them and was entitled to "care, supervision, support and rights of inheritance" from such de facto father. In his complaint, Michael H. also sought reasonable visitation rights with Victoria D.

The trial court had earlier granted Michael H. visitation rights pendente lite pursuant to section 4601, but those rights terminated when the court invoked the conclusive presumption of section 621 and granted summary judgment in favor of Gerald D.

First, we note there is no support for the proposition that the law recognizes both a legal, or de jure, *and* a de facto father of the same child. The case upon which Victoria D. relies, *Guardianship of Philip B.* (1983) 139 Cal.App.3d 407 [188 Cal.Rptr. 781], is inapposite. *Philip B.* involved a custody dispute over a child afflicted with Down's Syndrome waged by his parents against the child's court-appointed guardians who had developed a deep relationship with the child over a long period of time. The court described the guardians as "de facto parents" in explaining why an award of custody to the natural parents, rather than to the guardians, would be detrimental to the child.

In the case at bar, there is no hint that Carole D. and Gerald D. should be deprived of the custody of Victoria D. *Philip B.* has nothing whatsover to do with the contention that a child may have more than one father; that

---

[5]Civil Code section 4601 provides: "Reasonable visitation rights shall be awarded to a parent unless it is shown that such visitation would be detrimental to the best interests of the child. In the discretion of the court, reasonable visitation rights may be granted to *any other person having an interest in the welfare of the child.*" (Italics added.)

contention was expressly rejected by the Court of Appeal in *Vincent B.* v. *Joan R., supra,* 126 Cal.App.3d 619, which observed: "In enacting a conclusive presumption, the Legislature must have intended that only one man can be adjudicated a child's father." (*Id.,* at p. 627.)

Here, by granting summary judgment in favor of Gerald D. "pursuant to *Vincent B.* v. *Joan R.* and 621, as to complaint and cross-complaint," the trial court impliedly determined not only that Gerald D. was the presumed father of Victoria D., but also that Michael H. has no legal rights regarding Victoria D. and is not entitled to rights of visitation under section 4601.

In *Vincent B.,* after the Court of Appeal upheld the conclusive presumption in favor of the natural mother's then ex-husband, it stated: "Finally, appellant contends that even if Frank is conclusively presumed to be Z.'s father, appellant should be allowed visitation rights, since Civil Code section 4601 gives discretion to grant visitation rights to 'any other person having an interest in the welfare of the child.' We think it obvious in the circumstances of this case such court-ordered visitation would be detrimental to the best interests of the child. Appellant's interest in visiting the child is based on his claim that appellant is Z.'s father. Such claim is now determined to be legally impossible. The mother does not wish the child to be visited by appellant. Confusion, uncertainty, and embarrassment to the child would likely result from a court order that appellant, who claims to be Z.'s biological father, is entitled to visitation against the wishes of the mother." (*Vincent B.* v. *Joan R., supra,* 129 Cal.App.3d at pp. 627-628.)

DISPOSITION

Summary judgment is affirmed. The case is remanded to the trial court so that it may determine, and make appropriate orders with regard to, the attorneys' fees and costs, if any, to which Victoria D. is entitled. The parties are to bear their own costs on appeal.

Danielson, J., concurred.

Lui, Acting P. J., concurred in the result.

Petitions for a rehearing were denied June 2, 1987, and the petitions of all appellants for review by the Supreme Court were denied July 30, 1987.