895 So.2d 336 (2004)
J.O.J., Sr.
v.
R.R.
J.O.J., Sr.
v.
In the matter of J.O.J., Jr., a minor child.
2021136 and 2021150.
Court of Civil Appeals of Alabama.
July 16, 2004.
Lisa M. Smith and Kenneth J. Lay of Legal Services of Metro Birmingham, Birmingham, for appellant.
*337 Janet Pierce Groce, Birmingham, for appellee R.R.
CRAWLEY, Judge.
R.R. ("the mother") was married to C.R. ("the husband") in 1984. The mother and the husband separated in June 1993. The mother began living with J.O.J., Sr. ("the biological father") sometime after her separation from the husband, and, on June 12, 1994, she gave birth to a son she named J.O.J., Jr. ("the child"). No father was listed on the child's birth certificate.
On April 6, 2001, the mother filed a dependency petition in the Jefferson Juvenile Court ("the juvenile court") alleging that the child's custody was the subject of controversy. In that petition the mother stated that she, the biological father, and the child had all lived together as a family for approximately five years. The mother stated that she left the biological father's home in June 1999. She said that the biological father had refused to allow her to take the child with her. The mother reported that the biological father was the child's father, and she indicated that the child had lived with the biological father his entire life. She sought custody of the child.
On April 9, 2001, the mother filed a divorce complaint in the Jefferson Circuit Court ("the circuit court") against the husband. The mother and the husband entered into a settlement agreement, and the divorce became final on May 25, 2001. The child was not mentioned in any document pertaining to the divorce. The husband died on August 26, 2001.
On July 30, 2001, the Department of Human Resources ("DHR") filed a complaint in the juvenile court on behalf of the biological father, who had been receiving benefits under the "Aid to Dependent Children" program, to establish paternity and child support. The mother sought to dismiss the case, but the biological father successfully petitioned to have the paternity and dependency actions consolidated in October 2001. The consolidated case, although originally set to be tried in November, was continued to January 11, 2002, because the paternity testing had not been completed.
On January 11, 2002, the juvenile court entered a judgment establishing that the biological father was the father of the child based on the paternity-test results. The juvenile court also gave the biological father temporary custody of the child pending a trial on the custody issue set for June 19, 2002. The judgment further ordered the mother to pay child support.
On June 19, 2002, the parties appeared for trial. After legal arguments and documents indicating that the mother was married to the husband at the time of the child's birth were presented to the court, the juvenile court set aside its January 11, 2002, order establishing paternity, awarding the biological father temporary custody, and setting child support; dismissed the paternity and child-support action brought by DHR on behalf of the father; and dismissed, on the mother's motion, her dependency action. The biological father appealed the dismissal of both actions to the circuit court, which transferred the appeals to this court. This court transferred the appeals back to the circuit court because its transfer order did not comply with Rule 28, Ala. R. Juv. P. In re J.O.J., Jr., 860 So.2d 1281 (Ala.Civ.App.2003).
After the appeals were transferred back to the circuit court, the circuit court heard oral argument and considered the biological father's brief on the issues of jurisdiction and standing, in which he requested that the circuit court appoint an administrator ad litem for the husband's estate and make the estate a party to the paternity *338 action. The circuit court then dismissed both of the biological father's appeals on the basis that he lacked standing to bring his paternity action pursuant to Ala.Code 1975, § 26-17-6(a), a part of the Alabama Uniform Parentage Act ("the AUPA"), and Ex parte Presse, 554 So.2d 406 (Ala.1989). The father appeals.[1]
We will first address the biological father's appeal of the circuit court's dismissal of his appeal of the juvenile court's dismissal of the mother's dependency action. In light of the facts of the present case, we have determined that the mother's dependency action was more in the nature of a custody dispute. See Anonymous v. Anonymous, 504 So.2d 289 (Ala.Civ.App.1986); Jones v. Webb, 524 So.2d 374 (Ala.Civ.App.1988). We also conclude that the mother had the right to request that the juvenile court dismiss her "dependency" action pursuant to Rule 41(a)(2), Ala. R. Civ. P. The juvenile court was permitted to dismiss the mother's action at her request. The biological father does not advance an argument that the juvenile court's dismissal of the mother's action was error. See Asam v. Devereaux, 686 So.2d 1222, 1224 (Ala.Civ.App.1996) (stating that "[t]his court will address only those issues properly presented and for which supporting authority has been cited" (emphasis added)). Therefore, we affirm the circuit court's dismissal of the father's appeal from the juvenile court's dismissal of the mother's "dependency" action.
We now turn to the father's arguments concerning the circuit court's dismissal of his appeal of the juvenile court's dismissal of his paternity action. The provisions of the AUPA pertinent to this particular case are §§ 26-17-5 and 26-17-6, which state the circumstances under which a man can be presumed to be the father of a child and which provide who can bring an action to establish paternity of a child, respectively. Section 26-17-5 reads a follows:
"(a) A man is presumed to be the natural father of a child if any of the following apply:
"(1) He and the child's natural mother are or have been married to each other and the child is born during the marriage, or within 300 days after the marriage is terminated by death, annulment, declaration of invalidity, or divorce, or after a decree of separation is entered by a court.
"(2) Before the child's birth he and the child's natural mother have attempted to marry each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is or could be declared invalid, and
"a. If the attempted marriage may be declared invalid only by a court, the child is born during the attempted marriage, or within 300 days after the termination of the attempted marriage by death, annulment, declaration of invalidity, or divorce; or
"b. If the attempted marriage is invalid without a court order, the child is born within 300 days after the termination of cohabitation.
"(3) After the child's birth, he and the child's natural mother have married, or attempted to marry, each other by a marriage solemnized in apparent compliance with the law although the attempted marriage is or could be declared invalid, and

*339 "a. He has acknowledged his paternity of the child in writing, the writing being filed with the appropriate court or the Office of Vital Statistics; or
"b. With his consent, he is named as the child's father on the child's birth certificate; or
"c. He is otherwise obligated to support the child either under a written voluntary promise or by court order.
"(4) While the child is under the age of majority, he receives the child into his home or otherwise openly holds out the child as his natural child.
"(5) He acknowledges his paternity of the child in a writing filed in accordance with provisions of the legitimation statute.
"(6) He and the child's mother have executed an affidavit of paternity in accordance with the provisions of this chapter.
"(b) A presumption of paternity under this section may be rebutted in an appropriate action only by clear and convincing evidence. In the event two or more conflicting presumptions arise, that which is founded upon the weightier considerations of public policy and logic, as evidenced by the facts, shall control. The presumption of paternity is rebutted by a court decree establishing paternity of the child by another man."
Section 26-17-6 reads a follows:
"(a) A child, a child's natural mother, or a man presumed to be the child's father under subdivision (1), (2), or (3) of Section 26-17-5(a), may bring an action at any time for the purpose of declaring the existence of the father and child relationship presumed under subdivision (1), (2), or (3) of Section 26-17-5(a), but for purposes of support, the action shall be brought before the child reaches the age of 19; or
"(b) Any interested party may bring an action at any time for the purpose of determining the existence or non-existence of the father and child relationship presumed under subdivision (4) or (5) or (6) of Section 26-17-5(a).
"(c) An action to determine the existence of the father and child relationship with respect to a child who has no presumed father under Section 26-17-5 may be brought by the child, the mother, or personal representative of the child, the public authority chargeable by law with support of the child, the personal representative or a parent of the mother if the mother has died, a man alleged or alleging himself to be the father, or the personal representative or a parent of the alleged father if the alleged father has died or is a minor.
"(d) If an action under this section is brought before the birth of the child, all proceedings shall be stayed until after the birth, except service of process and the taking of depositions to perpetuate testimony.
"(e) If the child has been adopted, an action may not be brought."
Our supreme court, in Ex parte Presse, considered whether "a man claiming to be the father of a child conceived and born during the marriage of its mother to another man [has] standing under the [AUPA] to initiate an action to establish that he is the father of the child, where the presumed father persists in the presumption that he is the father." Ex parte Presse, 554 So.2d at 411. The court answered the question in the negative, determining that the man married to the mother at the time of the child's conception and birth was a presumed father whose presumption of paternity was weightier as a matter of public policy and logic than the *340 other presumptions listed in § 26-17-5(a), thus foreclosing another man from challenging the child's paternity. Id. at 412. Since that time, several cases have repeatedly held that a man cannot challenge the paternity of a child who was born during the marriage of the mother to another man as long as that other man persists in his presumption of paternity. See, e.g., Ex parte C.A.P., 683 So.2d 1010 (Ala.1996); and M.H.E. v. B.E., 864 So.2d 351 (Ala.Civ.App.2002).
The biological father in the present case argues that he has standing under the AUPA because he is a presumed father under § 26-17-5(a)(4), having taken the child into his home during the child's minority (in fact, immediately after the child's birth) and having held the child out for several years as his own. Thus, despite the language in Ex parte Presse indicating that a child cannot have two presumed fathers under § 26-17-5, the biological father argues that he could bring an action, make the husband (or, because the husband is deceased, have an administrator appointed to represent the husband's interest,[2]see Ala.Code 1975, § 43-2-250) a party, and proceed to prove that, under the facts presented, the husband did not persist in his presumption of paternity and that the biological father's presumption of paternity is the weightier of the two presumptions as a matter of public policy and logic. The mother disagrees. She argues that, under Ex parte Presse, the biological father simply does not have standing to pursue an action to establish that he, and not the husband, is the father of the child.
The holding in Ex parte Presse, however, does not automatically resolve the issue of the biological father's standing to bring his paternity action in the present case. The biological father, under the holding in Ex parte Presse, lacks standing only if the husband persisted in the presumption of paternity afforded him by § 26-17-5(a)(1). We have no evidence concerning whether the husband wished to persist in or disavow his presumption of paternity. The biological father argues on appeal, as he did in the circuit court, that the circuit court should have appointed an administrator ad litem to represent the husband's estate and should have made the husband's estate a party to the action, as required by Ala.Code 1975, § 26-17-11, which states that "each man presumed to be the father under § 26-17-5 ... shall be made parties...." After the husband's estate is made a party, the biological father argues, the circuit court could then hold an evidentiary hearing at which the parties could attempt to establish that the husband either did or did not persist in his presumption of paternity. We agree. Accordingly, we reverse the circuit court's dismissal of the biological father's appeal of the paternity action. Upon remand, the circuit court should appoint an administrator ad litem for the husband's estate (if the husband still has no estate), make the estate a party to the action, and hold a hearing[3] at which the parties may attempt to prove that the husband either did or did not persist in his presumption of paternity. If, *341 after that hearing, the circuit court determines that the husband did not persist in his presumption of paternity, the biological father's paternity action should proceed.
2021136REVERSED AND REMANDED WITH INSTRUCTIONS.
2021150AFFIRMED.
PITTMAN, J., concurs.
YATES, P.J., and THOMPSON, J., concur in the result, without writing.
MURDOCK, J., concurs as to case number 2021150 and concurs in part and dissents in part as to case number 2021136, with writing.
MURDOCK, Judge, concurring in part and dissenting in part as to case number 2021136.
Under Ex parte Presse, 554 So.2d 406 (Ala.1989), so long as a presumptive father persists in the presumption of paternity, that presumption is conclusive. Based on the record before us, this does not appear to be a case to which Ex parte Presse is applicable. I therefore concur with the conclusion reached by the main opinion that the judgment of the circuit court in case number 2021136 should be reversed and the cause remanded for further proceedings.
I cannot, however, agree fully with the instructions to the circuit court given by this court in case number 2021136. I disagree with those instructions in two respects.
First, the main opinion instructs the circuit court to appoint an administrator ad litem for the estate of the presumptive father. Estates and administrators of estates, however, by their nature and definition, are concerned with a decedent's assets and related pecuniary matters.[4] The issue addressed by the Alabama Uniform Paternity Act, § 26-17-1 et seq., Ala.Code 1975, however, is first and foremost something other than a pecuniary issue. It is an issue of who will parent a child; it is an issue of who will love, nurture, and raise a child to adulthood. Unlike the issues of assets and debts with which estates are concerned, this is an issue of a personal nature to which neither an estate nor an administrator of an estate can speak for the purposes contemplated by §§ 26-17-5 and 26-17-6, Ala.Code 1975, and Ex parte Presse.
The main opinion cites § 26-17-11, Ala.Code 1975, for the proposition that "each man presumed to be the father under § 26-17-5 ... shall be made [a] part[y]" to a paternity action under § 26-17-6. C.R. is deceased, however; he is no longer a "man" that can be made a party to this *342 action. Section 26-17-11 says nothing about making an estate a party to a paternity action under § 26-17-6. As to the highly personal issue of who will raise the child from this point forward, C.R.'s estate, an intangible legal entity, clearly is not the same as C.R., the "man." While a deceased man's estate may have financial interests that correspond with the interests the had while he was alive, the estate cannot parent a child and does not have a present personal interest in the love and nurture of the child as do interested family members, such as the mother and the child, himself or herself. Accordingly, I do not think that an estate or the administrator of an estate is the proper party to take and advocate a position on the issue of the deceased presumptive father's persistence in the presumption of paternity for purposes of Chapter 17 of Title 26, Code of Alabama 1975.[5]
Secondly, unlike the main opinion, which presumes that the trial court will appoint a guardian ad litem for the child and advises the trial court to make the child a party to the action, I believe we must require the trial court to do those things on remand. The rule of Ex parte Presse, though typically referred to as a rule of standing, is a substantive rule of law. It expresses "`the presumption that the husband of the mother of a child born during marriage is the father of that child  ... often said to be one of the strongest presumptions known to the law.'" Ex parte Presse, 554 So.2d at 413 (quoting Note, R. McG. & C.W. v. J.W. & W.W.: The Putative Father's Right to Standing to Rebut the Marital Presumption of Paternity, 76 N.W.U.L.Rev. 669 (1981)). In P.G. v. G.H., 857 So.2d 823 (Ala.Civ.App.2002), we addressed an alleged biological father's evidentiary argument that he had rebutted the presumption of the presumptive father's paternity, noting that our Supreme Court in Ex parte Presse had quoted the following portion of Michael H. v. Gerald D., 191 Cal.App.3d 995, 236 Cal.Rptr. 810 (1987), with approval:
"`"[The biological father] asserts that requirements of procedural due process prevent the State from terminating his liberty interest in his relationship with his child without affording him an opportunity to demonstrate his paternity in an evidentiary hearing. We believe this claim derives from a fundamental misconception of the nature of the California statute. While § 621 is phrased in terms of a presumption, that rule of evidence is the implementation of a substantive rule of law. California declares it to be, except in limited circumstances, irrelevant for paternity purposes whether a child conceived during and born into an existing marriage was begotten by someone other than the husband and had a prior relationship with him. As the Court of Appeal phrased it:
"`"`"The conclusive presumption is actually a substantive rule of law based upon a determination by the Legislature as a matter of overriding social policy, that given a certain relationship between the husband and wife, the husband is to be held responsible for the child, and that the integrity of the family unit should not be impugned."' [Michael H. v. Gerald D.,] 191 Cal.App.3d 995,] 1005, 236 Cal.Rptr. [810,] 816 [(1987)], quoting Vincent *343 B. v. Joan R., 126 Cal.App.3d [619], at 623, 179 Cal.Rptr. [9], at 10 [1981].
"`"Of course the conclusive presumption not only expresses the State's substantive policy but also furthers it, excluding inquiries into the child's paternity that would be destructive of family integrity and privacy."'"
P.G., 857 So.2d at 829 (quoting Ex parte Presse, 554 So.2d at 415, quoting in turn Michael H. v. Gerald D., 491 U.S. 110, 119-20, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989)).
In his appeal to this court, the alleged biological father seeks an evidentiary hearing on the issue of the presumptive father's persistence in the presumption of paternity. The issue of the presumptive father's persistence in the presumption of paternity is one that properly may be raised as an affirmative defense by another real party in interest, such as the mother or the child. Moreover, although this particular case does not appear to be one in which the child will attempt to prove that the presumptive father persisted in the presumption of paternity, that will not always be the case. Indeed, it would be easy to conceive of a case in which a presumptive father and the mother maintained for many years a normal family relationship with a child born during the marriage, but, upon the presumptive father's death, the mother sides with a biological father in a paternity action. (In other cases, the mother might have predeceased the presumptive father, abandoned the child, or for some other reason not be a party to the action.) In such a case, it could be vital for the child to have the right to appear through a guardian ad litem to explain to the court, and to submit evidence to the effect, that his or her presumptive father persisted in the presumption of paternity. If the child could not do so, no one would do so in such a case, and the presentation of evidence would become a decidedly nonadversarial, unilateral affair. Therefore, in paternity actions brought under Chapter 17 of Title 26, where the presumptive father has died before or during the litigation, I find it critical that the child be made a party and be represented by a guardian ad litem. I would instruct the trial court accordingly in the present case.
NOTES
[1] On April 1, 2004, this court referred this case to appellate mediation. See Rule 55, Ala. R.App. P. The parties were unable to reach an agreement; therefore, the case was reinstated on June 14, 2004.
[2] A paternity action is an equitable action that survives the death of a presumed father. Ex parte L.F.B., 599 So.2d 1179, 1182 (Ala.1992).
[3] We note that the child's guardian ad litem filed a motion to withdraw on the day of the hearing at which the mother's motion to dismiss was argued. The circuit court denied the motion to withdraw on the basis that it was moot in its order dismissing the biological father's action. We presume that, upon remand, the circuit court will appoint another guardian ad litem to represent the interests of the child. In addition, the circuit court may, at its discretion, make the child a party to the action. See Ala.Code 1975, § 26-17-11.
[4] See, e.g., Ala.Code 1975, §§ 43-2-250 through -256; see generally Ala.Code 1975, § 43-8-1(8) (defining an estate as "[i]nclud [ing] the property of the decedent whose affairs are subject to this chapter as originally constituted and as it exists from time to time during administration"), § 43-2-310, § 43-2-833(a) (a personal representative is charged with settling and distributing the estate of the decedent and, in doing so, acts as a fiduciary to the successors of the estate), and § 43-2-843. See also 31 Am.Jur.2d Executors and Administrators § 1 (2002) (explaining that the administration of estates involves collecting a decedent's assets, paying debts, and distributing the balance); and 31 Am.Jur.2d Executors and Administrators § 2 (2002) ("Administration of a decedent's estate is purely statutory and is in rem, not in personam, in that it conclusively determines the interests of all persons in the property of a decedent within the jurisdiction of the court." (Emphasis added; footnotes omitted.)). The cases I have reviewed that address the survival of the paternity issue beyond the death of an alleged father are themselves concerned with the issue of the proper disposition of the assets that comprise the deceased alleged father's estate. See, e.g., Ex parte L.F.B., 599 So.2d 1179 (Ala.1992).
[5] As a result, it is all the more important that the child be made a party to this action and have the opportunity, through a guardian ad litem, to speak on his or her own behalf as to the issue of the persistence vel non of his or her presumptive father in the presumption of paternity. See discussion, infra.