CRAWLEY, Judge.
R.R. (“the mother”) was married to C.R. (“the husband”) in 1984. The mother and the husband separated in June 1993. The mother began living with J.O.J., Sr. (“the biological father”), sometime after her separation from the husband, and, on June 12, 1994, she gave birth to a son she named J.O.J., Jr. (“the child”). No father was listed on the child’s birth certificate.
On April 6, 2001, the mother filed a dependency petition in the Jefferson Juvenile Court (“the juvenile court”) alleging that the child’s custody was the subject of controversy. In that petition the mother stated that she, the biological father, and the child had all lived together as a family for approximately five years. The mother stated that she left the biological father’s home in June 1999. She said that the biological father had refused to allow her to take the child with her. The mother reported that the biological father was the child’s father, and she indicated that the child had lived with the biological father his entire life. She sought custody of the child.
On April 9, 2001, the mother filed a divorce complaint in the Jefferson Circuit Court (“the circuit court”) against the husband. The mother and the husband entered into a settlement agreement, and the divorce became final on May 25, 2001. The child was not mentioned in any document pertaining to the divorce. The husband died on August 26, 2001.
On July 30, 2001, the Department of Human Resources (“DHR”) filed a complaint in the juvenile court on behalf of the biological father, who had been receiving benefits under the “Aid to Dependent Children” program, to establish paternity and child support. The mother sought to dismiss the case, but the biological father successfully petitioned to have the paternity and dependency actions consolidated in October 2001. The consolidated case, although originally set to be tried in November, was continued to January 11, 2002, because the paternity testing had not been completed.
On January 11, 2002, the juvenile court entered a judgment establishing that the biological father was the father of the child based on the paternity-test results. The juvenile court also, gave the biological father temporary custody of the child pending a trial on the custody issue set for June 19, 2002. The judgment further ordered the mother to pay child support.
On June 19, 2002, the parties appeared for trial. After legal arguments and documents indicating that the mother was married to the husband at the time of the child’s birth were presented to the court, the juvenile court set aside its January 11, 2002, order establishing paternity, awarding the biological father temporary custody, and setting child support; dismissed the paternity and child-support action brought by DHR on behalf of the biological father; and dismissed, on the mother’s motion, her dependency action. The biological father appealed the dismissal of both actions to the circuit court, which transferred the appeals to this court. This court transferred the appeals back to the circuit court because its transfer order did not comply with Rule 28, Ala. R. Juv. P. In re J.O.J., Jr., 860 So.2d 1281 (Ala.Civ.App.2003).
After the appeals were transferred back to the circuit court, the circuit court heard oral argument and considered the biological father’s brief on the issues of jurisdiction and standing, in which he requested that the circuit court appoint an administrator ad litem for the husband’s estate and make the estate a party to the paterni *338 ty action. The circuit court then dismissed both of the biological father’s appeals on the basis that he lacked standing to bring his paternity action pursuant to Ala.Code 1975, § 26-17-6(a), a part of the Alabama Uniform Parentage Act (“the AUPA”), and Ex parte Presse, 554 So.2d 406 (Ala.1989). The biological father appeals.[1]
We will first address the biological father’s appeal of the circuit court’s dismissal of his appeal of the juvenile court’s dismissal of the mother’s dependency action. In light of the facts of the present case, we have determined that the mother’s dependency action was more in the nature of a custody dispute. See Anonymous v. Anonymous, 504 So.2d 289 (Ala.Civ.App.1986); Jones v. Webb, 524 So.2d 374 (Ala.Civ.App.1988). We also conclude that the mother had the right to request that the juvenile court dismiss her “dependency” action pursuant to Rule 41(a)(2), Ala. R. Civ. P. The juvenile court was permitted to dismiss the mother’s action at her request. The biological father does not advance an argument that the juvenile court’s dismissal of the mother’s action was error. See Asam v. Devereaux, 686 So.2d 1222, 1224 (Ala.Civ.App.1996) (stating that “[tjhis court will address only those issues properly presented and for which supporting authority has been cited” (emphasis added)). Therefore, we affirm the circuit court’s dismissal of the father’s appeal from the juvenile court’s dismissal of the mother’s “dependency” action.
We now turn to the biological father’s arguments concerning the circuit court’s dismissal of his appeal of the juvenile court’s dismissal of his paternity action. The provisions of the AUPA pertinent to this particular case are §§ 26-17-5 and 26-17-6, which state the circumstances under which a man can be presumed to be the father of a child and which provide who can bring an action to establish paternity of a child, respectively. Section 26-17-5 reads a follows:
“(a) A man is presumed to be the natural father of a child if any of the following apply:
“(1) He and the child’s natural mother are or have been married to each other and the child is born during the marriage, or within 300 days after the marriage is terminated by death, annulment, declaration of invalidity, or divorce, or after a decree of separation is entered by a court.
“(2) Before the child’s birth he and the child’s natural mother have attempted to marry each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is or could be declared invalid, and
“a. If the attempted marriage may be declared invalid only by a court, the child is born during the attempted marriage, or within 300 days after the termination of the attempted marriage by death, annulment, declaration of invalidity, or divorce; or
“b. If the attempted marriage is invalid without a court order, the child is born within 300 days after the termination of cohabitation.
“(3) After the child’s birth, he and the child’s natural mother have married, or attempted to marry, each other by a marriage solemnized in apparent compliance with the law although the attempted marriage is or could be declared invalid, and
*339 “a. He has acknowledged his paternity of the child in writing, the writing being filed with the appropriate court or the Office of Vital Statistics; or
“b. With his consent, he is named as the child’s father on the child’s birth certificate; or “c. He is otherwise obligated to support the child either under a written voluntary promise or by court order. '
“(4) While the child is under the age of majority, he receives the child into his home or otherwise openly holds out the child as his natural child.
“(5) He acknowledges his paternity of the child in a writing filed in accordance with provisions of the legitimation statute.
“(6) He and the child’s mother have executed an affidavit of paternity in accordance with the provisions of this chapter.
“(b) A presumption of paternity under this section may be rebutted in an appropriate action only by clear and convincing evidence. In the event two or more conflicting presumptions arise, that which is founded upon the weightier considerations of public policy and logic, as evidenced by the facts, shall control. The presumption of paternity is rebutted by a court decree establishing paternity of the child by another man.”
Section 26-17-6 reads a follows:
“(a) A child, a child’s natural mother, or a man presumed to be the child’s father under subdivision (1), (2), or (3) of Section 26-17-5(a), may bring an action at any time for the purpose of declaring the existence of the father and child relationship presumed under subdivision (1), (2), or (3) of Section 26-17-5(a), but for purposes of support, the action shall be brought before the child reaches the age of 19; or
“(b) Any interested party may bring an action at any time for the purpose of determining the existence or non-existence of the father and child relationship presumed under subdivision (4) or (5) or (6) of Section 26-17-5(a).
“(c) An action to determine the existence of the father and child relationship with respect to a child who has no presumed father under Section 26-17-5 may be brought by the child, the mother, or personal representative of the child, the public authority chargeable by law with support of the child, the personal representative or a parent of the mother if the mother has died, a man alleged or alleging himself to be the father, or the personal representative or a parent of the alleged father if the alleged father has died or is a minor.
“(d) If an action under this section is brought before the birth of the child, all proceedings shall be stayed until after the birth, except service of process and the taking of depositions to perpetuate testimony.
“(e) If the child has been adopted, an action may not be brought.”
Our supreme court, in Ex parte Presse, considered whether “a man claiming to be the father of a child conceived and born during the marriage of its mother to another man [has] standing under the [AUPA] to initiate an action to establish that he is the father of the child, where the presumed father persists in the presumption that he is the father.” Ex parte Presse, 554 So.2d at 411. The court answered the question in the negative, determining that the man married to the mother at the time of the child’s conception and birth was a presumed father whose presumption of paternity was weightier as a matter of public policy and logic than the *340 other presumptions listed in § 26-17-5(a), thus foreclosing another man from challenging the child’s paternity. Id. at 412. Since that time, several cases have repeatedly held that a man cannot challenge the paternity of a child who was born during the marriage of the mother to another man as long as that other man persists in his presumption of paternity. See, e.g., Ex parte C.A.P., 688 So.2d 1010 (Ala.1996); and M.H.E. v. B.E., 864 So.2d 351 (Ala.Civ.App.2002).
The biological father in the present case argues that he has standing under the AUPA because he is a presumed father under § 26-17-5(a)(4), having taken the child into his home during the child’s minority (in fact, immediately after the child’s birth) and having held the child out for several years as his own. Thus, despite the language in Ex parte Presse indicating that a child cannot have two presumed fathers under § 26-17-5, the biological father argues that he could bring an action, make the husband (or, because the husband is deceased, have an administrator appointed to represent the husband’s interest,[2] see Ala.Code 1975, § 43-2-250) a party, and proceed to prove that, under the facts presented, the husband did not persist in his presumption of paternity and that the biological father’s presumption of paternity is the weightier of the two presumptions as a matter of public policy and logic. The mother disagrees. She argues that, under Ex parte Presse, the biological father simply does not have standing to pursue an action to establish that he, and not the husband, is the father of the child.
The holding in Ex parte Presse, however, does not automatically resolve the issue of the biological father’s standing to bring his paternity action in the present case. The biological father, under the holding in Ex parte Presse, lacks standing only if the husband persisted in the presumption of paternity afforded him by § 26-17-5(a)(l). We have no evidence concerning whether the husband wished to persist in or disavow his presumption of paternity. The biological father argues on appeal, as he did in the circuit court, that the circuit court should have appointed an administrator ad litem to represent the husband’s estate and should have made the husband’s estate a party to the action, as required by Ala.Code 1975, § 26-17-11, which states that “each man presumed to be the father under § 26-17-5 ... shall be made parties .... ” After the husband’s estate is made a party, the biological father argues, the circuit court could then hold an eviden-tiary hearing at which the parties could attempt to establish that the husband either did or did not persist in his presumption of paternity. We agree. Accordingly, we reverse the circuit court’s dismissal of the biological father’s appeal of the paternity action. Upon remand, the circuit court should appoint an administrator ad litem for the husband’s estate (if the husband still has no estate), make the estate a party to the action, and hold a hearing[3] at which the parties may attempt to prove that the husband either did or did not persist in his presumption of paternity. If, *341 after that hearing, the circuit court determines that the husband did not persist in his presumption of paternity, the biological father’s paternity action should proceed.
2021136 — REVERSED AND REMANDED WITH INSTRUCTIONS.
2021150 — AFFIRMED.
PITTMAN, J., concurs.
YATES, P.J., and THOMPSON, J., concur in the result, without writing.
MURDOCK, J., concurs as to case number 2021150 and concurs in part and dissents in part as to case number 2021136, with writing.

. On April 1, 2004, this court referred this case to appellate mediation. See Rule 55, Ala. R.App. P. The parties were unable to reach an agreement; therefore, the case was reinstated on June 14, 2004.

. A paternity action is an equitable action that survives the death of a presumed father. Ex parte L.F.B., 599 So.2d 1179, 1182 (Ala.1992).

. We note that the child’s guardian ad litem filed a motion to withdraw on the day of the hearing at which the mother's motion to dismiss was argued. The circuit court denied the motion to withdraw on the basis that it was moot in its order dismissing the biological father's action. We presume that, upon remand, the circuit court will appoint another guardian ad litem to represent the interests of the child. In addition, the circuit court may, at its discretion, make the child a party to the action. See Ala.Code 1975, § 26-17-11.