576 A.2d 67

**Cynthia SCOTT, Appellant,**

v.

**George MERSHON.**

Superior Court of Pennsylvania.

Argued March 21, 1990.

Filed June 6, 1990.

Nicholas J. Casenta, Jr., Asst. Dist. Atty., Downingtown, for Scott, appellant.

James P. Green, Downingtown, for appellee.

Before OLSZEWSKI, JOHNSON and HOFFMAN, JJ.

JOHNSON, Judge:

In this support action Cynthia Scott appeals from the order of September 11, 1989 dismissing her complaint for support against George Mershon, Jr. and her motion for the parties to have blood tests to determine paternity. The child was born to Cynthia Scott and her husband Ira Lee

Scott; thus the presumption of Ira Lee's paternity attaches. Because the facts of record fail to overcome the presumption, paternity is not a "relevant fact" warranting the ordering of blood tests under 42 Pa.C.S. § 6133. The court properly denied the motion for blood tests and dismissed the complaint for support. Hence, we affirm.

Cynthia Scott, a domiciliary of Texas, married Ira Lee Scott on April 11, 1987. The child in question, Cameron Lee Scott, was born in Burleson County, Texas on August 21, 1987. Ira Lee Scott is named as the father on Cameron Lee's birth certificate. On January 19, 1989, Cynthia Scott commenced a support action in Pennsylvania pursuant to 23 Pa.C.S. § 4301 against Mershon, a Pennsylvania resident. At that time as now, she was married and living with Ira Lee Scott. Mershon denied paternity. On May 9, 1989 Cynthia Scott petitioned the court, through the Chester County District Attorney's office, to order blood testing for herself, Cameron Lee and Mershon. The petition alleged no facts but merely stated that Mershon was the father of Cameron Lee. The court granted the petition and ordered the testing. Mershon filed preliminary objections and asked for a stay of all proceedings pending their disposition. The court entered a temporary stay on June 27, 1989. The preliminary objections were briefed and argued, and on September 11, 1989 the Honorable Alexander Endy denied the motion for a blood test and dismissed the complaint for support. This appeal follows.

Cynthia Scott avers that the trial court committed error in dismissing the complaint for support. Cynthia's allegations do not overcome the presumption that a child born in wedlock is a child of the marriage and thus of the husband, one of the strongest presumptions in our law and one recently reaffirmed in *John M. v. Paula T. and Michael T.*, 524 Pa. 306, 571 A.2d 1380 (1990). This well-established common law presumption has been traditionally referred to as the presumption of legitimacy. However, because all children are now deemed legitimate by statute, the *John M.* court has decided that the paternity presump-

tion should now always be labeled as "the 'presumption that a child born to a married woman is a child of the marriage,' and therefore of the woman's husband." 524 Pa. at ——, n. 2, 571 A.2d at 1383, n. 2.

Although the Uniform Act on Blood Tests to Determine Paternity, 42 Pa.C.S. §§ 6131 *et. seq.* allows the presumption to be overcome if blood test evidence is conclusive, *see* 42 Pa.C.S. § 6137, the act articulates a threshold requirement that paternity be a "relevant fact" before tests may be ordered:

> In any matter subject to this subchapter in which paternity, parentage or identity of a child is a relevant fact, the court upon its own initiative ... may, or upon motion ... shall order the mother, child and alleged father to submit to blood tests.

42 Pa.C.S. § 6133.

In this case Cynthia implicitly challenges the paternity of her husband by alleging that another man is the father. In order to reach the question of whether paternity is a "relevant fact," we must first decide whether the presumption that the husband is the father of the child has been overcome under the facts of this case. If the presumption stands firm, then paternity is not a relevant fact, and blood tests cannot be ordered.

Generally, a presumption is a legal rule governing the procedural effect to be given certain evidence. *Watkins v. Prudential Ins. Co. of America,* 315 Pa. 497, 173 A. 644 (1934). However, the force and effect of all presumptions is not the same but rather depends upon the reasons for which courts and legislatures have created a particular presumption. *Watkins, supra; see* L. Packel and A.B. Poulin, *Pennsylvania Evidence,* § 306 (1987). One reason for creation of a presumption is to further a preferred social policy. *Greene v. Oliver Realty, Inc.,* 363 Pa.Super. 534, 526 A.2d 1192 (1987); *See In re Manfredi's Estate,* 399 Pa. 285, 159 A.2d 697 (1960).

When the purpose of a presumption is to further a preferred social policy, it is understood to be more like a substantive rule of law. *See Michael H. v. Gerald D.*, 491 U.S. ——, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989). In *Michael H.* the United States Supreme Court was asked to decide whether the presumption, codified in a California statute, denied due process to a third party who sought to establish his paternity. The court looked to California law, as expressed in the opinion of the California Court of Appeal below, to discover the role of the presumption as it developed in that state. The Supreme Court concluded that the presumption:

is actually a substantive rule of law based upon a determination by the Legislature as a matter of overriding social policy that, given a certain relationship between the husband and wife, the husband is to be held responsible for the child, and that the integrity of the family unit should not be impugned.

*Michael H.*, 491 U.S. at ——, 109 S.Ct. at 2340, 105 L.Ed.2d at 103, *quoting* 191 Cal.App.3d 995, 1005, 236 Cal.Rptr. 810, 816 (1987).

Having determined the reasons behind the presumption, the Supreme Court considered the alleged biological father's countervailing interests in light of the state's overriding interest in the integrity of and preservation of the family. The Court decided that, even were the putative father to prevail in proving that he is the biological father, the state would not in fact award him substantive parental rights when there is an extant family in which the husband already exercises these with the child. The Court wrote:

It is no conceivable denial of constitutional right for a State to decline to declare facts unless some legal consequence hinges upon the requested declaration.

*Michael H.*, 491 U.S. at ——, 109 S.Ct. at 2343, 105 L.Ed.2d at 108.

Recently, in *John M.*, *supra*, the Pennsylvania Supreme Court interpreted our judicially-created, common law presumption under a set of facts similar to those before the

*Michael H.* court. In *John M.,* as in *Michael H.,* a third party to a marriage sought to establish his own paternity to gain paternal privileges. Our Supreme Court accorded the rights of the party claiming paternity and seeking parental rights more weight than did the United States Supreme Court. Nevertheless, our Supreme Court concluded that the rights and interests of the mother, the husband, the Commonwealth and the family unit prevailed. *John M.,* 524 Pa. at ——, 571 A.2d at 1385. The court emphasized that the needs and interests of the child were paramount. *John M.,* 524 Pa. at ——, 571 A.2d at 1386. While not articulating a particular evidentiary burden which must be sustained in order to overcome the presumption, the court implied that the burden is extremely heavy. Deciding that the presumption remained intact, the court denied blood tests for the purpose of challenging the paternity of the husband.

The *Michael H.* court annunciated the principle that the effect of the presumption, the evidentiary role it plays, is judicially determined. This is true regardless of whether the presumption is legislatively or judicially created. It has always been well settled in Pennsylvania, as it is now reaffirmed by the *John M.* decision, that the purpose of the presumption that the husband is the father of a child born in wedlock is to reinforce the strong state interest in the preservation of the family, *John M.,* 524 Pa. at ——, 571 A.2d at 1386, *citing Commonwealth ex rel. O'Brien v. O'Brien,* 390 Pa. 551, 136 A.2d 451 (1958), which in turn protects the child's welfare. *John M.* In *John M.* the Supreme Court decided that the presumption precluded an assertion of paternity *by* a party outside the marriage. We conclude that, under the facts of the present case, the presumption precludes an attempt by one of the partners in the intact marriage to assert paternity *against* a third party to the marriage.

Such an inquiry into paternity can yield no positive result for the child. Here, Mershon denies paternity. Cynthia alleges no contact between Mershon and Cameron Lee that could benefit the child. *See* Dallas, *Rebutting the Marital*

*Presumption: A Developed Relationship Test,* 88 Colum. L.Rev. 369 (1988). Cynthia seeks support only. Even if blood tests were conducted and did show incontrovertibly that Mershon was the biological father, this declaration would have no legal effect, *see Michael H.,* because Ira Lee Scott already carries the legal obligation to support Cameron Lee. A declaration that Mershon is the biological father could only disrupt the intact family, the maintenance of which is in the child's best interests.

Both the United States Supreme Court in *Michael H.* and the Supreme Court of Pennsylvania in *John M.* treat the presumption as a rule established to carry out important social policy that cannot be easily abrogated, if at all. In both cases, the courts concluded that the presumption prevailed against arguable countervailing rights of one *asserting* paternity. The present case diverges factually from these two cases in an important respect that only serves to strengthen the operation of the presumption. The third party to the marriage, Mershon, is not asserting his own paternity and seeking to be accorded rights. It is Cynthia who attempts to destabilize her own family by claiming that her husband is not the father.

In this case no arguably valid countervailing interests oppose the primacy of the presumption that Ira Lee Scott, married to Cynthia when the child was born, is the child's father. The record contains no evidence, not one factual averment, that could possibly be so construed. Not only does the presumption stand unchallenged, but successful challenge would have no legal effect, since the purpose of having Mershon declared the father is to collect support, and Ira Lee is legally responsible for and already fulfills his support obligation. Essentially, there is no aggrieved party. The child's needs and interests are best served by the status quo, interruption of which would in itself be harmful. No party loses rights by this result, and no party's interests are slighted. We conclude that nothing warrants overcoming the presumption. Therefore, because Cynthia fails to rebut the presumption that Ira Lee is the father of the

child, paternity never becomes a relevant fact under § 6133. The court properly refused to order blood tests.

■ For the purpose of clarification, we now discuss a coordinate rationale employed by courts to resolve paternity cases, equitable estoppel. The *John M.* court, too, discussed equitable estoppel, although the court was careful to point out that the facts precluded decision upon that ground; the discussion was dicta. Nevertheless, the discussion provides guidance. The equitable estoppel doctrine, as expressed by the *John M.* court, is that "under certain circumstances, a person might be estopped from challenging paternity where that person has by his or her conduct accepted a given person as father of the child." *John M.*, 524 Pa. at ——, 571 A.2d at 1386. The classic example of this is the situation in which a child is born out of wedlock, but the couple lives together and the father treats the child as his own. This principle has been codified in the Marriage Law, 48 P.S. § 1–1 *et seq.* After establishing that all children are legitimate irrespective of the marital status of the parents, the Act declares:

**Children; legitimacy; determination of paternity**

. . . .

(b) For purposes of prescribing benefits to children born out of wedlock by, from and through the father, paternity shall be determined by and one of the following ways:

(1) If the parents of a child born out of wedlock shall have married each other.

(2) If during the lifetime of the child, the father openly holds out the child to be his and receives the child into his home, or openly holds the child out to be his and provides support for the child which shall be determined by clear and convincing evidence.

48 P.S. § 167.

Courts have held that courses of action described by the statute estop the man from denying paternity. In *In re Montenegro*, 365 Pa.Super. 98, 528 A.2d 1381 (1987) we held

that a man who marries the mother after the birth of the child may not subsequently, upon the couples' separation, deny paternity. We went further and wrote that if the estoppel principle operates, even where blood tests had been taken and had demonstrated that the husband was not the biological father, the finding "is a nullity and provides no basis upon which the [husband] can deny paternity." *John M.*, 524 Pa. at ——, 571 A.2d at 1387, *citing Montenegro*, 365 Pa.Super. at 103, 528 A.2d at 1382.

Our courts have also employed estoppel to preclude a husband from denying paternity when a child is born *in* wedlock but the couple separates and the ex-husband attempts to deny paternity subsequent to separation. *Christianson v. Ely*, 390 Pa.Super. 398, 568 A.2d 961 (1990); *Commonwealth ex rel. Palchinski v. Palchinski*, 253 Pa. Super. 171, 384 A.2d 1285 (1978); *Commonwealth ex. rel. Weston v. Weston*, 201 Pa.Super. 554, 193 A.2d 782 (1963). The *John M.* court articulated the rationale of these cases concerning whether blood tests could be ordered: "These estoppel cases indicate that where the principle is operative, blood tests may well be *irrelevant*, for the law will not permit a person in these situations to challenge the status which he or she has previously accepted." *John M.*, 524 Pa. at ——, 571 A.2d at 1386.

Therefore, both adherence to the presumption and application of estoppel lead to the same point: the blood test is no longer necessary, whatever the result may be, because legal paternity has been established, and biological paternity is simply no longer relevant. While it is possible to resolve a born-in-wedlock case upon an estoppel rationale, it is not necessary, and therefore it may not be desirable, to do so. The better course is to rely upon the presumption that the husband is the father. It may be logically correct to say that having a child in wedlock estops one from denying paternity. However, we believe that the estoppel rationale will retain more power if reserved for cases to which it alone and not the presumption applies. In the same way, although it could be said that Cynthia, by having

420

a child in wedlock, is estopped to deny her husband's paternity, the presumption alone speaks eloquently and conclusively.

To close, we address two points raised by Cynthia Scott. Cynthia correctly avers that the trial court misapplied the case of *Coburn v. Coburn*, 384 Pa.Super. 295, 558 A.2d 548 (1989) (en banc), which holds that a prior agreement or judicial determination regarding paternity will collaterally estop a subsequent action for paternity. As there have been no prior agreements or determinations on the paternity issue in the present case, *Coburn* is inapposite.

■ Last, Cynthia Scott contends that the trial court erred in relying solely upon the fact that Cameron Lee's birth certificate listed Ira Lee as the father. This argument fails. The marriage itself and the fact that the child was born to the marriage alone establishes the presumption. The birth certificate is merely documentary evidence of the date of birth and the names of the parents; it possesses no independent talismanic significance.

For all the foregoing reasons, we affirm the order denying blood testing.

Order affirmed.