657 A.2d 1304

**Cindy SCOTT, for herself and on behalf of her son Cameron Scott, a minor, Appellant,**

v.

**George MERSHON, Appellee.**

Superior Court of Pennsylvania.

Argued Feb. 14, 1995.

Decided May 2, 1995.

Miles Warner, West Chester, for appellant.

Robert K. Kalmbach, Kennett Square, for appellee.

Before WIEAND, BECK and BROSKY, JJ.

WIEAND, Judge:

This is an appeal by Cindy Scott from a trial court order which dismissed a complaint for child support against George Mershon, the alleged father of her child, on grounds that the action was barred by principles of res judicata. After review, we agree with the trial court and, therefore, affirm.

■ Cindy and Ira Lee Scott were ostensibly married on April 11, 1987. Approximately four months later, on August 21, 1987, Cindy gave birth to a son, Cameron Scott. Cameron's birth certificate names Ira Scott as his father. On January 19, 1989, Cindy filed a complaint seeking child support from George Mershon, whom she alleged to be the father of her son. She also petitioned the court to order Mershon to submit to blood tests for the purpose of establishing his paternity. The trial court denied the petition for blood tests and, in response to preliminary objections, dismissed the complaint. The Superior Court affirmed, holding that Cindy had failed to overcome the presumption that a child born during coverture was the child of the husband. *Scott v. Mershon*, 394 Pa.Super. 411, 576 A.2d 67 (1990). Therefore, the Court concluded, paternity was not a "relevant fact" as contemplated by the Uniform Act on Blood Tests to Determine Paternity.[1] *Id.* at 417–418, 576 A.2d at 70–71. It observed, as a "coordinate rationale", that Cindy was estopped

---

1. 23 Pa.C.S. § 5104.

from denying the paternity of her husband. The Superior Court concluded:

> Therefore, both adherence to the presumption and application of estoppel lead to the same point: the blood test is no longer necessary, whatever the result may be, because legal paternity has been established, and biological paternity is simply no longer relevant. While it is possible to resolve a born-in-wedlock case upon an estoppel rationale, it is not necessary, and therefore it may not be desirable, to do so. The better course is to rely upon the presumption that the husband is the father. It may be logically correct to say that having a child in wedlock estops one from denying paternity. However, we believe that the estoppel rationale will retain more power if reserved for cases to which it alone and not the presumption applies. In the same way, although it could be said that Cindy, by having a child in wedlock, is estopped to deny her husband's paternity, the presumption alone speaks eloquently and conclusively.[2]

*Id.* at 419–420, 576 A.2d at 71–72.

On May 10, 1993, almost three years after the Superior Court's decision, Cindy filed a second complaint for support in which she again requested that the court order Mershon to submit to blood tests. Cindy alleged in this complaint that her marriage to Ira Scott was a nullity because of Ira Scott's earlier, undissolved marriage to another woman. Cindy contended, therefore, that there was no presumption that the child born during the marriage was a child of her husband. In his answer to the complaint, Mershon asserted the defense of res judicata. Following oral argument, the trial court accepted Mershon's argument and dismissed the support complaint. Cindy appealed.

In *Dempsey v. Cessna Aircraft Co.,* 439 Pa.Super. 172, 653 A.2d 679 (1995) (en banc), the doctrine of res judicata was discussed by the Superior Court as follows:

---

**2.** Whether the law, in this day of great medical and scientific advances, should continue to countenance the concealment of paternity in fact by a sometimes fictional presumption is a policy issue to be decided by the legislature and/or the Supreme Court.

The doctrine of res judicata holds that "[a] final valid judgment upon the merits by a court of competent jurisdiction bars any future suit between the same parties or their privies on the same cause of action." *Mintz v. Carlton House Partners, Ltd.,* 407 Pa.Super. 464, 474, 595 A.2d 1240, 1245 (1991), quoting *Stevenson v. Silverman,* 417 Pa. 187, 190, 208 A.2d 786, 788 (1965), *cert. denied,* 382 U.S. 833, 86 S.Ct. 76, 15 L.Ed.2d 76 (1965). The purpose of the doctrine is "to minimize the judicial energy devoted to individual cases, establish certainty and respect for court judgments, and protect the party relying on the prior adjudication from vexatious litigation." *Mintz v. Carlton House Partners, Ltd., supra* at 474, 595 A.2d at 1245, quoting *Lebeau v. Lebeau,* 258 Pa.Super. 519, 524, 393 A.2d 480, 482 (1978).

> Where parties have been afforded an opportunity to litigate a claim before a court of competent jurisdiction, and where the court has finally decided the controversy, the interests of the state and of the parties require that the validity of the claim and any issue actually litigated in the action not be litigated again.

*Ham v. Sulek,* 422 Pa.Super. 615, 621–622, 620 A.2d 5, 8 (1993). Regardless of whether the plaintiff effects a recovery in the first action, he [or she] may not relitigate an action which has once been adjudicated. 46 Am.Jur.2d, Judgments § [524].

Application of the doctrine of res judicata requires that the two actions possess the following common elements: (1) identity of the thing sued upon; (2) identity of the cause of action; (3) identity of the parties; (4) identity of the capacity of the parties. *Matternas v. Stehman,* 434 Pa.Super. 255, 261, 642 A.2d 1120, 1123 (1994); *McArdle v. Tronetti,* 426 Pa.Super. 607, 612, 627 A.2d 1219, 1222 (1993), *allocatur denied,* 537 Pa. 622, 641 A.2d 587 (1984); *Banker v. Valley Forge Ins. Co.,* 401 Pa.Super. 367, 373–374, 585 A.2d 504, 508 (1991), *allocatur denied,* 529 Pa. 615, 600 A.2d 532 (1991).

*Id.* at 174–78, 653 A.2d at 680–81. See also: *Hammel v. Hammel,* 431 Pa.Super. 230, 237–239, 636 A.2d 214, 217–218

556

(1994); *Morgan Guar. Trust Co. v. Staats,* 428 Pa.Super. 479, 491–493, 631 A.2d 631, 637–638 (1993).

■ Principles of res judicata are also applicable to determinations of paternity. See: *Wachter v. Ascero,* 379 Pa.Super. 618, 550 A.2d 1019 (1988); *Gardner v. Gardner,* 371 Pa.Super. 256, 538 A.2d 4 (1988), *allocatur denied,* 521 Pa. 605, 555 A.2d 115 (1989); *Manze v. Manze,* 362 Pa.Super. 153, 523 A.2d 821 (1987); *Shindel v. Leedom,* 350 Pa.Super. 274, 504 A.2d 353 (1986); *R.J.K. v. B.L.,* 279 Pa.Super. 71, 420 A.2d 749 (1980); *Commonwealth ex rel. Nedzwecky v. Nedzwecky,* 203 Pa.Super. 179, 199 A.2d 490 (1964).

■ In the instant case, it is clear that the four elements of res judicata are present. The parties and their respective capacities are identical. The plaintiff is again seeking support for the same child against the same defendant. Indeed, the complaint filed in 1993 concedes that on January 19, 1989, "Plaintiff filed a Complaint ... seeking the same relief as now sought in this action." Cindy does not assert that the four elements are not present, but rather that the action is not barred because prior decisions were based on a "mistaken inference" that she and Ira Scott were married. According to the averments in her complaint filed in 1993, Cindy was living in Texas during the time her first action was being prosecuted. "Had she been able effectively to communicate her correct marital status to her attorneys", she argues, she would have asserted that the child had been "born *out of* wedlock because she was herself unmarried." (emphasis in original). Cindy's failure to inform her counsel that her marriage may not have been valid, however, will not allow her to avoid the effect of a prior, valid determination.

"The binding effect of a former adjudication does not depend upon the evidence or arguments presented. Inadvertent omission of available evidence is never an acceptable ground for a new action or a new trial." *Fleming v. Strayer,* 367 Pa. 284, 288, 80 A.2d 786, 788 (1951) (citations omitted). See: P.L.E. Judgment § 272. Res judicata encompasses not only those issues, claims or defenses that were actually raised in

the prior proceeding, but also those which could or should have been raised and were not. See: *Fox v. Gabler*, 534 Pa. 185, 189, 626 A.2d 1141, 1143 (1993); *Duquesne Light Co. v. Pittsburgh Railways Co.*, 413 Pa. 1, 5, 194 A.2d 319, 321 (1963), *cert. denied*, 377 U.S. 924, 84 S.Ct. 1221, 12 L.Ed.2d 215 (1964); *McArdle v. Tronetti*, 426 Pa.Super. 607, 611, 627 A.2d 1219, 1222 (1993); *Dyer v. Travelers*, 392 Pa.Super. 202, 207, 572 A.2d 762, 764 (1990); *General Acc. Fire & Life Assur. Corp., Ltd. v. Flamini*, 299 Pa.Super. 312, 316, 445 A.2d 770, 772 (1982).

The matter of paternity was decided in the prior litigation. That determination is res judicata.[3] The order of the trial court, therefore, will be affirmed.

After careful review of the record, however, we disagree with appellee's contention that the instant appeal was frivolous. "An appeal is frivolous where it lacks any basis in law or fact. Simply because an appeal lacks merit does not make it frivolous." *Marino by Marino v. Marino*, 411 Pa.Super. 424, 443, 601 A.2d 1240, 1250 (1992) (citation omitted). Because we have determined that the appeal is not frivolous, we reject appellee's request to award counsel fees and costs pursuant to Pa.R.A.P. 2744.

The order of the trial court is affirmed. The request for counsel fees and costs is denied.

---

3. If Cindy had been unaware of her husband's prior marriage and discovered it after the prior litigation, the result would be the same. Generally, "res judicata may not be avoided by the discovery of new evidence bearing on a fact or issue involved in the original action ... even though the newly discovered evidence might have been sufficient to justify a new trial in the first case." 46 Am.Jur.2d, Judgments § 567 (footnotes omitted).