J-A05006-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| H.Z., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| M.B., | |
| Appellant | No. 2470 EDA 2015 |

Appeal from the Order entered August 10, 2015,
in the Court of Common Pleas of Montgomery County,
Domestic Relations Division, at No(s): 2010-18179

BEFORE:  OLSON, OTT, JJ., and STEVENS*, P.J.E.

MEMORANDUM BY OLSON, J.:                    **FILED JUNE 28, 2016**

Appellant M.B. appeals from the order dated August 6, 2015, and entered on August 10, 2015, that directed him to submit to genetic testing to prove paternity of H.Z.'s ("Mother") minor child, J.B.Z. ("Child"), who was born in April 2005.  The trial court entered the order after a hearing on M.B.'s Emergency Motion to Dismiss/Preliminary Objections to Mother's Complaint for Child Support.  After careful consideration, we affirm.

On March 3, 2005, Mother filed a petition for paternity and child support against M.B. in New York County, New York ("New York Child Support/Paternity Petition"); *see* N.Y. Family Court Act § 511-565 (regarding "[p]roceedings to establish the paternity of the child and to compel support").  On March 28, 2006, Mother and M.B. entered into a

_____

* Former Justice specially assigned to Superior Court.

purported "Stipulation of Discontinuance" with respect to that action. In relevant part, the Stipulation of Discontinuance read:

> IT IS HEREBY STIPULATED by and between the undersigned that the present paternity proceeding and [Mother's] cause of action against [M.B.] for an order of filiation and an order of support are hereby discontinued *with prejudice* as of the date hereof.
>
> Dated: New York, New York
>          March 28, 2006
>
>
> /s
> _____
> [Mother]
>
> /s
> _____
> [M.B.]

Stipulation of Discontinuance, Exhibit G to M.B.'s Emergency Motion to Dismiss/Preliminary Objections and Stay of Genetic Testing, 3/28/06, at 1 (emphasis in original) (hereinafter "Stipulation of Discontinuance" or "New York Stipulation of Discontinuance").

The trial court set forth the procedural history of the Pennsylvania litigation as follows.

> On May 17, 2010, [Mother] filed a complaint for child support with the Montgomery County[, Pennsylvania] Domestic [R]elations section [(hereinafter "Pennsylvania Child Support Complaint")]. Defendant [M.B.] anticipated that he would be ordered to submit to genetic testing as a matter of course, as required by Pa.R.C.P. 1910.15(b)(1), since he intended to deny that he is the father. Accordingly, on July 7, 2010, [M.B.] filed an "Emergency Motion to Dismiss/Preliminary Objections and Stay of Genetic Testing." [M.B.] argued that he could not be

compelled to provide a specimen for testing to determine paternity because the matter was *res judicata* on March 28, 2006 when [Mother] entered into a stipulation to [discontinue], with prejudice, [the] support/paternity claim she had filed in New York. [Mother answered M.B.'s preliminary objections and claimed that, for a variety of reasons, the New York Stipulation of Discontinuance did not preclude her current action for support. One of these reasons, Mother claimed, was because application of the doctrine of *res judicata* would "work an injustice" and cause an inequity in this case. **See** Mother's Answer to Preliminary Objections, 8/3/10, at 8-9]. . . .

By order entered on July 15, 2010, upon the agreement of counsel, the Honorable Emanuel A. Bertin, [of the Montgomery County Court of Common Pleas,] stayed the proceedings before the domestic relations section pending further proceedings before Judge Bertin and his ruling on whether [Mother] had the right to renew her claim that [M.B.] is the father. This matter was rotated from Judge Bertin to the Honorable R. Stephen Barrett in April[] 2014, and then to the [Honorable Arthur R. Tilson] in March, 2015.

On June 10, 2015, [Judge Tilson] presided [over] an evidentiary hearing on [M.B.'s] motion/preliminary objections to dismiss [Mother's] complaint for support.

Trial Court Opinion, 10/16/15, at 1-2.

At the hearing on the motion to dismiss/preliminary objections held on June 10, 2015, Mother testified on her own behalf, as did M.B. On August 10, 2015, the trial court entered the order that directed M.B. to submit to genetic testing.

In its opinion, the trial court explained the rationale for its order denying M.B.'s motion to dismiss/preliminary objections and directing him to submit to genetic testing:

As noted previously, [M.B.] asked [the trial court] to summarily dismiss [Mother's complaint] on the ground that [the New York

Stipulation of Discontinuance acted as a bar to Mother's action for child support]. The affirmative defense of *res judicata* can be evoked to bar a subsequent action when there is: (1) identity of the parties; (2) capacity of the parties; (3) identity of the issues; and (4) identity of the cause of action. ***E.g., Scott v. Mershon***, 657 A.2d 1304 (Pa. Super. 1995). However, the purpose of the bar of *res judicata* is not to categorically disallow all subsequent proceedings but rather to insulate a litigant from repetitive[,] vexatious litigation and to conserve judicial resources. ***Balent v. City of Wilkes-Barre***, 669 A.2d 309, 315 (Pa. 1995). Thus, even when the four elements are shown, it is well-established that a subsequent action may nevertheless proceed when the prior judgment was the result of fraud or mutual mistake. ***E.g., R.J.K. v. B.L.***, 420 A.2d 749 (Pa. Super. 1980). Similarly, the doctrine of *res judicata* is applied sparingly in zoning questions where the benefits of flexibility outweigh the detriments of repetitive litigation. ***E.g., City of Pittsburgh v. Zoning Bd. of Adjustment of City of Pittsburgh***, 559 A.2d 896 (Pa. 1989). Finally, new evidence that could not have been presented during the prior adjudication will defeat the bar of *res judicata*. ***E.g., Bethlehem Pennsylvania, Department of Environmental Resources***, 90 A.2d 1383 (Pa. Cmwlth. 1978).

The evidence presented at the hearing . . . strongly militated in favor of [ordering M.B. to submit to] genetic testing. First, [Mother] presented to the [trial court] credible and compelling evidence, in the form of her testimony, that no man could possibly be the father except for [M.B.]. [Mother] also described the circumstances by which she and [M.B.] had been drinking alcohol at an after-work party, how she afterwards invited [M.B.] into her apartment, and how the two of them had sex without using birth control. [Mother] missed her next menstrual period and thereupon confirmed that she had, indeed[,] become pregnant by her only sexual partner since her previous menstrual period. This testimonial evidence was not heard during the New York proceedings.

Second, when [M.B.] learned that [Mother] had become pregnant soon after they had sex[,] his conduct amounted to a tacit admission that he was the father. For example, [M.B.] attempted to persuade [Mother] to terminate the pregnancy by abortion[] and[,] in the alternative, [M.B.] asked [Mother] to keep secret that he was the father in exchange for his promise to acknowledge paternity when the time was right. [M.B.'s]

- 4 -

motive was to avoid the immediate professional and personal scandal he feared would follow from an express acknowledgement that he had gotten [Mother] pregnant, since the two of them had worked closely together in a professional capacity; [M.B.] as a neurosurgeon and [Mother] as a surgical nurse.

Third, the [trial court] heard evidence that reflected poorly on the circumstances and integrity of the clinical specimen-taking procedure that was the sole basis of the prior [discontinuance] [in New York] upon which [M.B.] in this matter now relies. No evidence was allowed at the earlier proceeding on the issue of whether proper specimen collection protocols were followed but [Mother] testified credibly before the undersigned that the specimens from [Mother], [M.B.,] and [Child] were not taken contemporaneously, and that [Mother's] and [Child's] specimens were not properly sealed and secured against mishandling or tampering. From [Mother's] description of the specimen-taking procedure she observed, [the trial] court concluded that the earlier genetic testing procedure was informal, at best, and potentially unprofessional and reckless.

Fourth, and perhaps most importantly, vital new photographic evidence was presented to the undersigned to show that the child has matured to bear an amazing physical resemblance to [M.B.]. This evidence of a strong physical resemblance could not have been presented at the earlier proceeding because [Child] was[,] . . . at the time[,] less than [one-year] old.

The totality of the foregoing findings lead the [trial court] to conclude that the outcome of the prior proceeding (and its assumed premise that good science had proven conclusively that [M.B.] could not possibly be the father) was shockingly unreliable and that the bar of *res judicata* should yield under these unusual circumstances to allow [the trial] court to reach the underlying merits of [Mother's complaint for child support,] . . . depending on the results of the genetic testing ordered in these proceedings. This was especially so given several concerns. The first is the best interests of the child. This is a particular circumstance where [Child] has two inherited medical conditions – which do not run in [Mother's] family – and identifying the father would be beneficial for medical treatment. Apart from that, [Child] at present has no idea who is his father. As mentioned above, the chronology of [Mother's] insemination

and pregnancy resulted in a situation where [Mother currently] makes no claim that any other man is [Child's] father.

> The child born out of wedlock . . . has an interest in knowing his father and in having two parents to provide care for him. The child's concerns include a known belonging to a certain line of descent with knowledge of any benefits or detriments inheritable from that line. Further, the child is entitled to financial assistance from each parent able to provide such support.

***Minnich v. Rivera***, 506 A.2d 879, 882 (Pa. 1986).

[Moreover], . . . [c]ounsel for [Mother] has represented to [the trial] court that a laboratory finding adverse to [Mother's] claim will resolve the dispute over paternity, once and for all; a dispute that has roiled now, off and on, for ten years. Finality and closure can be best achieved by reaching the merits of [Mother's] claim.

In this connection, apart from the primary position taken by [M.B.] in this matter, that [Mother] cannot avoid the bar of *res judicata* with only extrinsic proof, [M.B.] argued in the alternative that [Mother's] delay in bringing these proceedings warrants their summary dismissal. But to the contrary, [M.B.] cannot show how the passage of time has caused him any prejudice – except that the genetic testing ordered by [the trial] court will prove him to be the father – and [Mother] has proven that the delay in this case was never caused by any doubt she has ever had that [M.B.] is the child's father. [***See*** N.T. Hearing, 6/10/15, at] 71-72 ([Mother] explaining that she withdrew prior action only upon advice of counsel based on prior, suspect, paternity test). Rather it was financial hardship that caused the delay. Indeed there is no better explanation for [Mother's] delay after she had surreptitiously obtained a specimen of [M.B.'s] DNA, and then afterwards a laboratory report that purportedly concluded that [M.B.] was the father, were it for any other cause. The [trial court] granted [M.B.'s] motion *in limine* and ruled that second laboratory report inadmissible hearsay, and its purported conclusion did not figure in the decision to allow [Mother] to proceed on the merits during these proceedings, but the second genetic test results are nevertheless powerful proof that [Mother's] delay was not caused by any doubt on her part that [M.B.] is [Child's] father.

Trial Court Opinion, 10/16/15, at 2-6 (internal footnote omitted) (some internal citations omitted) (parallel citations omitted).

On August 13, 2015, M.B. filed a notice of appeal, along with a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), and a motion for an emergency stay.[1] On August 20, 2015, the trial court entered an order denying M.B.'s emergency motion for a stay of the August 10, 2015 order pending appeal. On August 25, 2015, M.B. filed an emergency motion for a stay of the August 10, 2015 order pending appeal with this Court. On September 4, 2015, this Court entered a *per curiam* order granting the emergency motion for a stay pending the appeal.

In his brief on appeal, M.B. raises the following claims:

1. Did the trial court err in ordering [M.B.] to submit to additional paternity testing by failing to properly consider that the parties litigated [Mother's] same paternity claim over ten years ago in New York and entered into a stipulation to discontinue the New York matter with prejudice?

2. Did the court below err in failing to properly consider [Mother's] responses to [M.B.'s] Requests for Admissions and the lack of responses to [M.B.'s] Supplemental Request for Admissions, which established all of the elements of *res judicata* and contained other admissions supporting the granting of [M.B.'s] Motion to Dismiss?

---

[1] "This Court accepts immediate appeals from orders directing or denying genetic testing to determine paternity." **Barr v. Bartolo**, 927 A.2d 635, 638-39 (Pa. Super. 2007), *quoting* **Buccieri v. Campagna**, 889 A.2d 1220, 1220 n.1 (Pa. Super. 2005).

3. Did the [trial c]ourt err in improperly expanding the scope of the June 10, 2015 hearing by essentially conducting a hearing on the overall issue of the child's paternity instead of and prior to disposing of [M.B.'s] Motion to Dismiss – namely, the application of *res judicata* and full faith and credit?

4. Did the [trial c]ourt err in admitting testimony in violation of Pennsylvania Rule of Evidence 401-402 (relevance) and 403 (the exclusion of relevant evidence that is unfairly prejudicial)?

5. Is the [trial c]ourt's determination, as presented in the August [10], 2015 Order and October 16, 2015 Opinion, against the weight of the evidence?

6. Is the [trial c]ourt's determination against public policy?

7. Did the [trial c]ourt err in ordering [M.B.] to submit to paternity testing without properly and expressly determining [M.B.'s] Motion to Dismiss and thus permitting the matter to move forward according to the proper procedure of Pennsylvania Rule of Civil Procedure 1910.15?

M.B.'s Brief at 5-6.

"[T]his Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or an abuse of discretion." ***Gaboury v. Gaboury***, 988 A.2d 672, 675 (Pa. Super. 2009), *quoting **Rambo v. Greene***, 906 A.2d 1232, 1235 (Pa. Super. 2006); ***Clemleddy Const., Inc. v. Yorston***, 810 A.2d 693, 696 (Pa. Super. 2002). "In ruling on whether preliminary objections should have been [sustained], an appellate court must determine whether it is clear from doubt from all the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish a right to relief." ***R.M. Baxter ex rel. T.M.***, 624, 777 A.2d 446, 449 (Pa. 2001).

Further, with regard to preliminary objections, this Court has explained:

> "When no issues of fact are raised, the court shall dispose of the preliminary objections as a matter of law on the basis of the pleadings alone." **Matter of D.L.S.**, 420 A.2d 625, 626 (Pa. Super. 1980). Where preliminary objections raise issues of fact, however, the Rules of Civil Procedure provide that "the court shall consider evidence by depositions or otherwise." Pa.R.C.P. 1028(c)(2); **see also Devarmin v. Consol. Rail Corp.**, 931 A.2d 1, 14 (Pa. Super. 2007) ("[I]f an issue of fact is raised by preliminary objections . . . the [trial] court may not reach a determination based upon its view of the controverted facts, but must resolve the dispute by receiving evidence thereon through interrogatories, depositions or an evidentiary hearing").

**R.M. v. J.S.**, 20 A.3d 496, 508-509 (Pa. Super. 2011).

Our standard of review of a trial court's order relating to paternity is the same as that for child support: whether the trial court abused its discretion or committed an error of law. **D.M. v. V.B.**, 87 A.3d 323, 327 (Pa. Super. 2014). Further, in the context of a child support/paternity case, we have stated:

> An abuse of discretion exists if the trial court has overridden or misapplied the law, or if there is insufficient evidence to sustain the order. Moreover, resolution of factual issues is for the trial court, and a reviewing court will not disturb the trial court's findings if they are supported by competent evidence. It is not enough [for reversal] that we, if sitting as a trial court, may have made a different finding.

**Vargo v. Schwartz**, 940 A.2d 459, 462 (Pa. Super. 2007).

"[T]he interpretation and application of a statute is a question of law that compels plenary review to determine whether the court committed an error of law. As with all questions of law, the appellate standard of review is

- 9 -

*de novo* and the appellate scope of review is plenary." ***C.B. v. J.B.***, 65 A.3d 946, 951 (Pa. Super. 2013).

In his first three, related issues, M.B. contends that the trial court erred or abused its discretion in failing to give *res judicata* effect, under the Full Faith and Credit Clause of the United States Constitution, to the Stipulation of Discontinuance filed in New York. He further asserts that the trial court abused its discretion when it did not consider Mother's failure to meet her burden of overcoming the application of *res judicata* by a showing that the New York Stipulation of Discontinuance was the result of fraud or mutual mistake. M.B. argues that his preliminary objections established that the New York Stipulation of Discontinuance barred Mother from pursuing him in any further child support action, and that the trial court improperly expanded the scope of the hearing on his motion to dismiss to the broader issue of paternity.

We conclude that, under New York's principles of *res judicata*, the New York Stipulation of Discontinuance does not preclude Mother's current action for child support. M.B.'s claims to the contrary thus fail.[2]

As the Pennsylvania Supreme Court declared:

> The United States Constitution requires that full faith and credit "shall be given in each State . . . to the judicial

---

[2] Although our reasoning differs from that provided by the trial court, this Court "will affirm the trial court's decision if the result is correct on any ground, without regard to the grounds on which the trial court relied." ***Commonwealth v. Cassidy***, 462 A.2d 270, 272 (Pa. Super. 1983).

- 10 -

[p]roceedings of every other State." U.S. Const. Art. IV, § 1. The Full Faith and Credit Clause thus precludes a party from attacking collaterally a judgment of one state by attempting to re-litigate the underlying dispute resolved by that judgment in another state. Thus, full faith and credit typically requires that a state give a judgment the same *res judicata* effect the judgment would have been afforded in the state in which it was rendered.

***Wilkes ex rel. Mason v. Phoenix Home Life Mut. Ins. Co.***, 902 A.2d 366, 375-376 (Pa. 2006).

Moreover, as this Court held, the Full Faith and Credit Clause requires that we employ New York's *res judicata* doctrine to determine the preclusive effect of the prior New York Stipulation of Discontinuance. ***Autochoice Unlimited, Inc. v. Avangard Auto Fin., Inc.***, 9 A.3d 1207, 1214 (Pa. Super. 2010) ("[w]e therefore look to Florida law to determine what *res judicata* effect the [prior] Broward County[, Florida] court order would have on [a]ppellant's cause of action if brought in that jurisdiction"); ***see also Barnes v. Buck***, 346 A.2d 778, 781 (Pa. 1975) ("[t]he decree of the Ohio court dismissing the petition to set aside the divorce decree, like the divorce decree itself, is entitled to full faith and credit in the courts of Pennsylvania. . . . That is, we must give it the same recognition and *res judicata* effect as it would receive in the courts of Ohio"); ***but see Wilkes***, 902 A.2d at 377 (perceiving a "fog of ambiguity" around the issue of whether, under the Full Faith and Credit Clause, the home state must apply the *res judicata* doctrine of the foreign state that entered the prior judgment or whether the home state may simply apply its own *res judicata* doctrine to determine the

preclusive effect of the foreign state judgment; the **Wilkes** Court refused to decide the apparent conflict, but the Court did apply the foreign state's *res judicata* doctrine because that was how "the case [was] briefed to [it]").

Pursuant to New York law:

> Under the doctrine of *res judicata*, a party may not litigate a claim where a judgment on the merits exists from a prior action between the same parties involving the same subject matter. The rule applies not only to claims actually litigated but also to claims that could have been raised in the prior litigation. The rationale underlying this principle is that a party who has been given a full and fair opportunity to litigate a claim should not be allowed to do so again. Additionally, under New York's transactional analysis approach to *res judicata*, once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy. *Res judicata* is designed to provide finality in the resolution of disputes, recognizing that considerations of judicial economy as well as fairness to the parties mandate, at some point, an end to litigation.

*In re Hunter*, 827 N.E.2d 269, 274-275 (N.Y. 2005) (internal citations, quotations, and corrections omitted).

Regarding a stipulated discontinuance, the New York Appellate Division has held that "a stipulation of discontinuance with prejudice does carry *res judicata* authority with respect to the same cause. **However, the language 'with prejudice' is narrowly interpreted when the interests of justice, or the particular equities involved, warrant such an approach**." *Dolitsky's Dry Cleaners, Inc. v. Y L Jericho Dry Cleaners, Inc.*, 610 N.Y.S.2d 302, 303 (N.Y. App. Div. 1994) (internal citations and

- 12 -

corrections omitted) (some internal citations omitted) (emphasis added); *see also Employers' Fire Ins. Co. v. Brookner*, 850 N.Y.S.2d 554, 556 (N.Y. App. Div. 2008) ("when the final determination relied upon for *res judicata* effect is a stipulation of discontinuance, the language 'with prejudice' is narrowly interpreted when the interests of justice, or the particular equities involved, warrant such an approach") (internal citations omitted) (some internal quotations omitted); *c.f. Stacey O v. Donald P*, 525 N.Y.S.2d 385, 386 (N.Y. App. Div. 1988) ("[t]o determine whether Family Court properly denied the motion to vacate the order dismissing the second petition, we must first decide whether Family Court correctly gave *res judicata* effect to the dismissal of the first petition.   A court has discretion to specify whether its order dismissing a claim is to have *res judicata* effect. . . .   Even where a dismissal is specifically 'on the merits' or 'with prejudice', **the circumstances must warrant barring the litigant from further pursuit of his claim in order for those phrases to be given preclusive effect**") (internal citations omitted) (emphasis added).[3]

---

[3] We note that, within her brief, Mother expressly argues that "New York [would] not apply *res judicata* when doing so would result in an injustice. The language 'with prejudice' should not be given a preclusive effect herein." Mother's Brief at 19.  Moreover, at the trial level, Mother argued that the New York Stipulation of Discontinuance did not preclude her current action for support because application of the doctrine of *res judicata* would "work an injustice" and cause an inequity in this case.  Mother's Answer to Preliminary Objections, 8/3/10, at 8-9.

With respect to the case at bar, it is true that the prior, New York action and the current, Pennsylvania action share an identity of the parties (with Mother as the plaintiff/petitioner and M.B. as the defendant/respondent) and share an identity of the subject matter (with Mother claiming that M.B. is Child's father and petitioning for child support from M.B.). Moreover, the prior, New York action ended with Mother and M.B. executing a "Stipulation of Discontinuance," which declared:

> IT IS HEREBY STIPULATED by and between the undersigned that the present paternity proceeding and [Mother's] cause of action against [M.B.] for an order of filiation and an order of support are hereby discontinued *with prejudice* as of the date hereof."

New York Stipulation of Discontinuance, 3/28/06, at 1 (emphasis in original).

Nevertheless, under New York law, "the language 'with prejudice' [in a stipulation of discontinuance must be] narrowly interpreted when the interests of justice, or the particular equities involved, warrant such an approach." ***Dolitsky's Dry Cleaners, Inc.***, 610 N.Y.S.2d at 303 (internal citations and corrections omitted) (some internal citations omitted). We conclude that, in this case, the interests of justice and the equities require that we narrowly construe the language "with prejudice" that is found in the prior stipulation and hold that the prior stipulation neither bars the current child support action nor precludes the trial court's order that M.B. undergo genetic testing. We will explain.

At the time Mother and M.B. entered into the New York Stipulation of Discontinuance, the New York rule regarding voluntary discontinuances read:

Rule 3217. Voluntary discontinuance

**(a) Without an order.** Any party asserting a claim may discontinue it without an order

1. by serving upon all parties to the action a notice of discontinuance at any time before a responsive pleading is served or within twenty days after service of the pleading asserting the claim, whichever is earlier, and filing the notice with proof of service with the clerk of the court; or

2. by filing with the clerk of the court before the case has been submitted to the court or jury a stipulation in writing signed by the attorneys of record for all parties, provided that no party is an infant, incompetent person for whom a committee has been appointed or conservatee and no person not a party has an interest in the subject matter of the action; or

3. by filing with the clerk of the court before the case has been submitted to the court or jury a certificate or notice of discontinuance stating that any parcel of land which is the subject matter of the action is to be excluded pursuant to title three of article eleven of the real property tax law.

**(b) By order of court.** Except as provided in subdivision (a), an action shall not be discontinued by a party asserting a claim except upon order of the court and upon terms and conditions, as the court deems proper. After the cause has been submitted to the court or jury to determine the facts the court may not order an action discontinued except upon the stipulation of all parties appearing in the action.

**(c) Effect of discontinuance.** Unless otherwise stated in the notice, stipulation or order of discontinuance, the discontinuance is without prejudice, except that a

> discontinuance by means of notice operates as an adjudication on the merits if the party has once before discontinued by any method an action based on or including the same cause of action in a court of any state or the United States.
>
> **(d)** All notices, stipulations, or certificates pursuant to this rule shall be filed with the county clerk by the defendant.

N.Y. C.P.L.R. 3217 (effective July 14, 2003 to May 6, 2009).[4]

With respect to the prior, New York action, the action: was voluntarily discontinued over one year after "service of the pleading asserting the claim" (thus, Rule 3217(a)(1) could not apply); did not involve a parcel of land (thus, Rule 3217(a)(3) could not apply); and, was not discontinued *via* court order (thus, Rule 3217(b) could not apply). Therefore, the only possible way to construe the voluntary discontinuance of the prior, New York action was – as the name of the filing suggests – as a "stipulation of discontinuance" under Rule 3217(a)(2). However, Rule 3217(a)(2) specifically declares:

> "Any party asserting a claim may discontinue it without an order . . . by filing with the clerk of the court before the case has been submitted to the court or jury a stipulation in writing signed by the attorneys of record for all parties, **provided that** no party is an infant, incompetent person for whom a committee has been appointed or conservatee and **no person not a party has an interest in the subject matter of the action**."

---

[4] Rule 3217 has since been amended. However, the current rule is, in all relevant respects, identical to the rule that existed at the time Mother and M.B. entered into their stipulation. **Compare** N.Y. C.P.L.R. 3217 (effective July 14, 2003 to May 6, 2009) to N.Y. C.P.L.R. 3217 (effective July 1, 2012).

N.Y. C.P.L.R. 3217(a)(2) (emphasis added).[5]  Moreover, as Rule 3217(b) makes clear, "**Except as provided in subdivision (a), an action shall not be discontinued by a party asserting a claim except upon order of the court and upon terms and conditions, as the court deems proper**."  N.Y. C.P.L.R. 3217(b) (emphasis added).

Child was born in April 2005 and Child was never made a party to Mother's New York Child Support/Paternity action.[6]  Yet, the "Stipulation of Discontinuance" in the New York action was signed by Mother and M.B. on March 28, 2006 – and the stipulation purported to "discontinue with prejudice" Mother's "paternity proceeding and [] cause of action against

---

[5] We note that the parties signed the written stipulation; however, contrary to the requirements of Rule 3217(a)(2), "the attorneys of record" did not sign the stipulation.  *See* N.Y. C.P.L.R. 3217(a)(2).  Nevertheless, as the New York Appellate Division has held, this particular failing constitutes "a mere irregularity which does not render the stipulation invalid."  *Levy v. Levy*, 135 N.Y.S.2d 95, 95 (N.Y. App. Div. 1954).

[6] New York Family Court Act § 522 declares:

> Proceedings to establish the paternity of the child and to compel support under this article may be commenced by the mother, whether a minor or not, by a person alleging to be the father, whether a minor or not, by the child or child's guardian or other person standing in a parental relation or being the next of kin of the child, or by any authorized representative of an incorporated society doing charitable or philanthropic work, or if the mother or child is or is likely to become a public charge on a county, city or town, by a public welfare official of the county, city or town where the mother resides or the child is found.

N.Y. Family Court Act § 522.

- 17 -

[M.B.] for an order of filiation and an order of [child] support." New York Stipulation of Discontinuance, 3/28/06, at 1 (emphasis omitted). Obviously, however, **Child** had a substantial "interest in the subject matter of the action" that Mother and M.B. purportedly discontinued – and in the three matters that were the subject of the Stipulation of Discontinuance. As such, under the plain terms of Rule 3217, Mother and M.B were not permitted to discontinue Mother's New York Child Support/Paternity action by way of stipulation. Rather, the only way Mother's action could have been voluntarily discontinued was by way of court order "and upon [the] terms and conditions, as the court deems proper." N.Y. C.P.L.R. 3217(b).[7]

Rule 3217 attempted to protect Child's interests by mandating that Mother and M.B. could not voluntarily discontinue the prior New York Child Support/Paternity action by way of stipulation – and that the action could have only been voluntarily discontinued by "order of the court and upon [the] terms and conditions, as the court deems proper." N.Y. C.P.L.R. 3217. Mother and M.B. flouted this rule and discontinued the prior New York Child Support/Paternity action without making Child a party to the proceedings,

---

[7] **See**, **e.g.**, **A.F. v. S.F.**, 836 N.Y.S.2d 496, 2007 WL 685847 (N.Y. Sup. Ct., N.Y Cty. 2007) (unpublished memorandum) (denying the petitioner's unopposed motion to discontinue his action for child custody, as "[t]he welfare of the three [children] would [] be compromised by a discontinuance of the instant action"); **see also Julie J. v. Edwin A.**, 86 Misc.2d 882, 883 (Fam. Ct., N.Y. Cty. 1976) (denying mother's motion to discontinue her paternity action because "the infant child and the public hav[e] a substantial interest in these proceedings").

without Child being represented by counsel, and without the necessary court order to ensure the protection of Child's interests. As such, we conclude that, under New York law, "the interests of justice [and] the particular equities involved" mandate that we "narrowly interpret[]" the language "with prejudice" in the New York Stipulation of Discontinuance. ***Dolitsky's Dry Cleaners, Inc.***, 610 N.Y.S.2d at 303.

In keeping with this "narrow[] interpretation," we conclude that the prior, New York Stipulation of Discontinuance would certainly not preclude a Pennsylvania child support action that was instituted by Child or by Mother "on behalf of [Child]"[8] – given that the New York Stipulation of Discontinuance was entered into against the express requirements of Rule 3217 and, as such, left Child's interests unprotected. Further, we conclude that it would be an untoward elevation of form over substance to hold that *res judicata* barred Mother's current action for child support, or her automatic right to have M.B. genetically tested to determine paternity. This is especially so, given that *res judicata* would not bar an identical action that

---

[8] In relevant part, Pennsylvania Rule of Civil Procedure 1910.3 declares:

> (a) An action [for support] may be brought
> (1) by a person, including a minor parent or a minor spouse, to whom a duty of support is owing, or
>
> (2) on behalf of a minor child by a person having custody of the child, without appointment as guardian *ad litem*. . . .

Pa.R.C.P. 1910.3.

was instituted by Child or by Mother "on behalf of [Child]" and given that, even though Mother instituted the current action, her claim of child support and the concomitant paternity test are both done "to serve the best interests of the child[]." ***R.K.J. v. S.P.K.***, 77 A.3d 33, 37 (Pa. Super. 2013) ("[t]he principal goal in child support matters is to serve the best interests of the children through the provision of reasonable expenses"); ***Minnich***, 506 A.2d at 882 ("[t]he child born out of wedlock . . . has an interest in knowing his father and in having two parents to provide care for him").[9]

---

[9] Moreover, in ***Wieland v. Wieland***, 948 A.2d 863, 870 (Pa. Super. 2008), we stated:

> DNA paternity testing, with its pinpoint accuracy, has posed more squarely than ever before a dilemma in paternity testing. Before the advent of DNA testing, the determination of paternity could not be as accurately established as it can today. Because the truth can be so reliably revealed, the policy question as to whether to expose the truth or whether to bypass the truth for some important family or societal reasons has taken on added meaning. While we recognize that the right to paternity testing is not absolute and there may be strong family or societal reasons to deny paternity testing, such testing should be favored. The establishment of a parent-child relationship is important to both parent and child. A father and his child have the right to establish a kinship relationship and the child has a right to expect both financial and emotional support from his or her father. Furthermore, a child's biological history may be essential to his or her future health, and the child's cultural history may be important to his or her personal well[-]being.

***Wieland***, 948 A.2d at 870-71.

- 20 -

Therefore, we conclude that the prior New York Stipulation of Discontinuance does not bar Mother's current complaint for child support, or her automatic right to have the disputing M.B. genetically tested to determine paternity. M.B.'s claims to the contrary fail.

Given this Court's reasoning, M.B.'s fourth claim (wherein he argues that the trial court improperly admitted testimony that was irrelevant to the *res judicata* effect of the Stipulation of Discontinuance) and fifth claim (wherein he argues that the trial court's ruling was against the weight of the evidence) will not be analyzed, as our decision was not based upon the alleged improper testimony or upon the evidence admitted during the hearing. Rather, our decision was based upon the legal effect of the prior, New York Stipulation of Discontinuance.

Next, we address M.B.'s contention in his sixth issue that the trial court's order is against the public policy of Pennsylvania. He limits his arguments to the application of the doctrine of *res judicata* and the effect of that doctrine under public policy considerations. As M.B. argues: "[Mother's] efforts to relitigate this matter fly in the face of the very principles under which our judicial system functions. The parties resolved the issue of the paternity of the Child in New York ten years ago via a decision to end all litigation, with prejudicial effect." M.B.'s Brief at 49.

This claim fails. As this Court explained above, because Mother and M.B. improperly entered into the prior Stipulation of Discontinuance – and,

in so doing, violated a rule that was intended to protect Child – the New York courts would not give the stipulation *res judicata* effect as to Child. Therefore, we refuse to conclude that Mother's current action for Child's support (and the concomitant requirement that M.B. be genetically tested for a determination as to his paternity of Child) is barred by the improper Stipulation of Discontinuance. M.B.'s public policy argument thus fails.

Finally, in his seventh issue, M.B. argues that the trial court failed to follow the proper procedure set forth in a child support action, citing Pa.R.C.P. 1910.11 and/or 1910.12, regarding an office conference before a hearing officer at the initiation of a child support action. He urges that, under Pa.R.C.P. 1910.15, the conference officer enters an order directing the parties to submit to genetic testing if paternity cannot be established at the conference level. M.B. complains that the trial court improperly directed him to submit to genetic testing without first directing the matter to proceed through the office conference procedure. Accordingly, he seeks for us to vacate the trial court's order.

Mother's complaint for child support/paternity raised a number of controverted factual allegations, and the trial court held a hearing to assist it in reaching its factual determinations on M.B.'s motion to dismiss/preliminary objections. The trial court also directed genetic testing to assist it in rendering a factual determination.

In **R.M.**, this Court instructed that, if an issue of fact is raised by preliminary objections, the trial court may not reach a determination based upon its view of the controverted facts, but must resolve the dispute by receiving evidence thereon through interrogatories, depositions or an evidentiary hearing. **R.M.**, 20 A.3d at 508-509

M.B. fails to cite any case authority to support his contention that the trial court must wait for the hearing officer's office conference and direction to the parties before the court may order genetic testing, especially where the putative father has denied paternity, and requested the court to dismiss the support/paternity action based on preliminary objections. Thus, we find that he has waived his contention. **See Chapman-Rolle v. Rolle**, 893 A.2d 770, 774 (Pa. Super. 2006) (stating, "[i]t is well settled that a failure to argue and to cite any authority supporting any argument constitutes a waiver of issues on appeal," *quoting* **Jones v. Jones**, 878 A.2d 86, 90 (Pa. Super. 2005)).

Nevertheless, we would find that the trial court had authority to direct M.B. to submit to the genetic testing. The Uniform Act on Blood Tests to Determine Paternity, 23 Pa.C.S.A. § 5104, provides as follows, in pertinent part:

> (a) Short title of section.--This section shall be known and may be cited as the Uniform Act on Blood Tests to Determine Paternity.

> (b) Scope of section.—

(1) Civil matters.--This section shall apply to all civil matters.

. . .

(c) Authority for test.--In any matter subject to this section in which paternity, parentage or identity of a child is a relevant fact, the court, upon its own initiative or upon suggestion made by or on behalf of any person whose blood is involved, may or, upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall order the mother, child and alleged father to submit to blood tests. If any party refuses to submit to the tests, the court may resolve the question of paternity, parentage or identity of a child against the party or enforce its order if the rights of others and the interests of justice so require.

. . .

(f) Effect of test results.--If the court finds that the conclusions of all the experts as disclosed by the evidence based upon the tests are that the alleged father is not the father of the child, the question of paternity, parentage or identity of a child shall be resolved accordingly. If the experts disagree in their findings or conclusions, the question shall be submitted upon all the evidence.

(g) Effect on presumption of legitimacy.--The presumption of legitimacy of a child born during wedlock is overcome if the court finds that the conclusions of all the experts as disclosed by the evidence based upon the tests show that the husband is not the father of the child.

23 Pa.C.S.A. § 5104.

Pennsylvania Rule of Civil Procedure 1910.15(b)(1), regarding child support and paternity, provides that, if a defendant in a paternity case appears but does not execute an acknowledgment of paternity at the office conference, the court shall enter an order directing the parties to appear for genetic testing. The order must advise the defendant that his failure to

appear for the testing will result in entry of an order finding that he is the father of the child. The order must also advise the plaintiff that her failure to appear for testing may result in sanctions, including entry of an order dismissing the paternity action without prejudice. **See** Pa.R.C.P. 1910.15(b)(1).

As M.B. filed the motion to dismiss/preliminary objections denying paternity with the court, we find that the trial court had authority to order M.B. to submit to paternity testing without awaiting M.B.'s refusal to sign an acknowledgment of paternity at a hearing officer's conference. The trial court stated that the goal of finality that supports *res judicata* can best be served under these unusual circumstances by the genetic testing order, and that Mother's counsel had represented to the court that a laboratory finding adverse to Mother's claim will resolve the dispute over paternity. Trial Court Opinion, 10/16/15, at 5. The trial court added that finality and closure would be best achieved by reaching the merits of Mother's claim. **Id.** This Court agrees. Accordingly, we affirm the order of the trial court.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/28/2016

- 25 -